## GREAT COASTAL EXPRESS, INC.
### v.
### INTERNATIONAL BROTHERHOOD OF TEAMSTERS, etc.
#### Civ. A. No. 5–71–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 22, 1972.

James Minor, Jr., Richmond, Va., J. W. Alexander, Jr., Charlotte, N. C., for plaintiff.

Raymond L. Bergan, Paul Martin Wolff, Earl C. Dudley, Jr., Washington, D. C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The International Brotherhood of Teamsters (hereinafter "Union"), pursuant to Rule 59, Federal Rules of Civil Procedure, has moved the Court for judgment *non obstante veredicto* (N.O.V.), as a consequence of a jury verdict rendered against it in excess of one million dollars. Both parties have exhaustively briefed the issues raised by the Union's motion, and it is upon said briefs and the record before it that the Court finds these matters ripe for disposition.

The plaintiff, a freight trucking corporation, originally brought suit in the Law and Equity Court of the City of Richmond in December of 1970, against the Union for alleged damages accruing from a protracted strike, accompanied by alleged widespread union violence and secondary boycotting. The original State court motion for judgment demanded $3,500,000 compensatory damages and $2,500,000 punitive damages. The defendant Union removed that action to this Court invoking jurisdiction pursuant to §§ 301, 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 185, 187, and the removal statute, 28 U.S.C. § 1441(b). A jury trial was demanded.

In November 1971 the plaintiff submitted a trial brief whereby it specified causes of action for compensatory and

punitive damages under LMRA § 303 (29 U.S.C. § 187) and the common (tort) law of Virginia respectively. In response, the Union's trial brief raised issues with respect to the § 303 claim, which issues are the gravamen of the present motion, and averred that plaintiff's common law tort claim was not substantiated by a clear showing of the International Union's (defendant) participation in the alleged tortious activity as required by § 6 of the Norris-LaGuardia Act, 29 U. S.C. § 106 and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1965).

Upon completion of plaintiff's case at trial, the defendant Union moved for a directed verdict. The motion was granted with respect to the violence (common law) claim, the Court having concluded that the plaintiff had not sustained the burden of producing a clear showing of the defendant's participation in that regard as required by the statutory law and the principles of *Gibbs, supra.*

A directed verdict for the Union with respect to the secondary boycott claim was, however, denied. The Court, though satisfied that the oral testimony adduced was insufficient to sustain a finding of agency between the strikers and the defendant Union, concluded that it was bound as to that issue by the principles enunciated by its appellate court in the case of International Brotherhood of Teamsters v. United States, 275 F.2d 610 (4th Cir. 1960), discussed *infra,* and accordingly permitted the secondary boycott claim to go to the jury.

Upon summation to the jury, plaintiff's counsel averred that it had shown actual damages proximately resulting from the alleged secondary boycotting in the amount of $942,065.00. In the course of its deliberations, the jury inquired of the Court, "What amount of damages lost in dollars is the plaintiff asking? Is it the $942,065 figure?" After colloquy with counsel, the Court instructed the jury, "The direct answer to that inquiry is yes . . . I must tell you that you are not to concern yourselves with what the plaintiff asks for unless it coincides with the evidence as you find it." The jury subsequently returned a verdict for $1,300,000.00.

The Union has predicated its motion for judgment N.O.V. on a number of grounds, many of which deal with matters best left for appellate review.[1] The Court is duty bound, however, to consider several of the issues raised thereby, which may be delineated as follows:

1. Was there a requisite showing of agency made by the plaintiff by which the defendant, the parent union, could be held accountable for acts of its members and/or local affiliates?

2. Was the jury finding of damages made in accordance with the mandate of LMRA § 303?

3. Were charges to the jury of such a contradictory nature so as to be confusing or otherwise an impediment to impartial jury deliberation?

Considering these issues in turn, the Court concludes as follows:

## I.

The labor dispute at issue here began as a wildcat strike and was subsequently adopted by three Teamster locals. The defendant admits supplying strike benefits to its members and to providing $10,000 to the depleted treasury of one of the locals involved. The defendant also admits that one of its officers solicited help for the locals involved from its other, non-involved affiliates. The defendant with some force asserts that the above acts do not establish the requisite agency on which to predicate liability for illegal strike activities. The Court's initial inclination to sustain these conten-

---

1. The defendant has averred that insufficient evidence of secondary boycott activities was presented to sustain a jury verdict therefor. Much of defendant's contention rests upon the proper legal definition of the secondary boycott alleged here. The Court is of the opinion that its determination of these legal issues is clearly set forth in the jury charge and that factual determinations with regard to proof of alleged illegal activity were properly made by the jury. Except for the question of contradiction in said charges, the Court will not consider that issue.

tions was, as heretofore stated, precluded by its interpretation of the rule of International Brotherhood of Teamsters v. United States, *supra*, (hereinafter "IBT"). Upon restudy of this matter and of the *IBT* case, the Court concludes that *IBT* binds the Court to the determination that requisite agency was here present.

In that case, a criminal contempt action was brought against the present defendant. The defendant therein challenged the service upon an officer of a union local, contending that said service was ineffective against the defendant International Union. The issue thus formed was whether the local officer was properly an agent of the International Union. In making its determination, the Court of Appeals for this circuit closely examined the constitutional provisions of the defendant's charter. Based upon a thorough examination of the provisions of that constitution, in an opinion by Judge Haynsworth, the Court stated that to find that the local official was not an agent of the parent union could not "be squared with realism." This conclusion was based on the parent's far-reaching control of the local, as shown by the provisions of the International Constitution bearing upon such control of many details of its business and operations. The Court further concluded that its finding was buttressed by the fact that the local involved therein was then under trusteeship. It appears from the Court's reasoning, however, that the status of trusteeship was not, as defendant has argued, the determinative factor in the Appellate Court's conclusion.

Because the Teamsters ratified a new Constitution in July 1966, (after *IBT* but prior to the event complained of here), the Court must determine whether the new provisions would result in determinations in accord with those in *IBT*. The provisions with regard to membership are similar. People eligible to be local members are automatically eligible to be International members. Exceptions to this rule may be made by the International's General President. As in *IBT*, the International's Constitution prescribes monthly local meetings and the rules of procedure therefor. The General President or General Secretary-Treasurer of the parent union has the power, upon approval of the General Executive Board, to revoke a local charter. Local charters are issued by the parent union. The Trusteeship provisions are also similar. More important, as in *IBT*, the International must approve contemplated job actions by local affiliates, and has the power to override local executive board decisions with respect to acceptance of contract terms and job actions by directly submitting the issue to a vote of the local. Without making further detailed findings as to the specific operations of the International-local framework, it will suffice for the Court to state that the two constitutions are so similar as to bring the current set-up within the rationale of *IBT*.

The Court must conclude, therefore, that as a matter of law the jury was entitled, upon appropriate findings of fact, to impute the actions of various locals and individual members to the parent union.

## II.

██ The Union claims that the jury determination as to damages is violative of the LMRA § 303, upon which the Union's liability is founded. The Court concludes that this view is well taken.

The Supreme Court made clear in Local 20, Teamsters' etc. Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964), that § 303 is addressed only to illegal strike activity and that any liability predicated upon that section must be confined to actual, compensatory damages. Punitive damages are not within the contemplation of that section.[2] The damages must flow from injuries proximately caused by the illegal secondary activities under § 303.

---

2. Punitive damages for non-peaceful secondary activity may be awarded on a state claim under pendent jurisdiction. See UMW v. Gibbs, *supra*. However, in this action the plaintiff failed to sustain a state law cause of action.

Upon trial, the plaintiff's counsel in argument claimed to have shown actual damages resulting from the secondary boycotts in the amount of $942,065. As the above-recited facts indicate, the jury was well aware of this figure. Nevertheless it returned a verdict of $1,300,-000. The Court is aware that "once the fact of damage has been properly shown, 'uncertainty as to their amount will not foreclose recovery.'" Riverside Coal Co. v. U. M. W., 410 F.2d 267 (6th Cir. 1969). The Court is also cognizant of the fact that the protracted length of the strike here involved (seven months) as well as the widespread geographical union strike activities make it extremely difficult to establish an exact figure for actual damages, and that accordingly, the jury is given some latitude under *Riverside Coal.* Nevertheless, the damage award here was substantially out of touch with damages allegedly proven. Although the plaintiff has sought to justify the award here with further figures of subsequent business losses, that evidence was not before the jury. Under *Morton, supra,* this award cannot be left to stand.

The Court is of the further opinion that the jury, while well intentioned, was in spite of the Court's instructions to the contra influenced in its consideration of damages by the gross and vicious conduct attributed to the members of the local union and their sympathizers. This is reflected in its verdict which exceeded even the claims of plaintiff's persuasive advocate by more than $300,000.00.

The question remains, therefore, as to the appropriate remedy. While there is proper precedent under § 303 for a remittitur up to 40%, see Gulf Coast Bldg. & Const. Tr. Council v. Hoar & Son, 370 F.2d 746 (5th Cir. 1967), the Court concludes that in this case, owing to the complicated nature of the damage question, that a remand for new jury determination as to damages is appropriate. See Carpenter's Local 1273, etc. v. Hill, 398 F.2d 360 (9th Cir. 1968).

### III.

The Union alleges that portions of the jury charge were of such a con-

tradictory nature as to be improperly confusing to the jury. Specifically, it alludes to the two passages, denoted by brackets below, which deal with the definition of the strike activities complained of. The Court has contextualized these passages by adding intervening portions of the charge:

[The other type of legal primary activity, strike activity, is called roving or ambulatory picketing. Now, this type of picketing permits the union to picket beyond the terminal, warehouse, or other buildings belonging to Great Coastal. It allows the union to follow and picket Great Coastal trucks while they make pickups and deliveries. And in this type of picketing the union must conform to certain rules. Briefly summarized these rules permit the union to picket at the time when a Great Coastal truck may be located on the premises of a Great Coastal customer and is engaged in its normal trucking business at its customer's place of operation.

The rules permit picketing by the union providing such picketing is reasonably close to the Great Coastal truck and permits picketing where a Great Coastal truck is present at the premises of a Great Coastal customer provided the union discloses that its dispute is only with Great Coastal and not its customer.

Now, you heard a great deal of testimony and discussion and argument about the legality or illegality of ambulatory picketing. About whether that picketing is rendered illegal if the union hopes that the employees of Great Coastal's customers will honor its picket lines. You are specifically instructed that the ambulatory picketing is not in and of itself illegal. *Nor is it rendered illegal by the fact that the union may have hoped and desired that the employees of Great Coastal's customers would honor the picket lines.* Ambulatory picketing, which is confined as reasonably as possible to the vicinity of the Great Coastal truck and to the time when the Great Coastal truck was present on the premises is

presumptively legal.] (Emphasis supplied by defendant.)

\*　　\*　　\*　　\*　　\*　　\*

Section 303(a), 29 U.S.C.A. 187(a) provides, and I quote, "It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in Section 158(b)(4) of this Title."

Section 158(b)(4) defines an unfair labor practice as follows: *"It shall be unfair labor practice for a labor organization or its agents to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services;* or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, *where in either case an object thereof is (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person,* or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of Section 159 of this Title: provided, that nothing contained in this clause shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing." (Emphasis supplied by Court).

\*　　\*　　\*　　\*　　\*　　\*

[The words "induce or encourage" are broad enough to include in them every form of persuasion. Pickets and picket signs are a form of persuasion used by unions. And if you find that the union picketing at places of business of the plaintiff's customers was intended to appeal to employees of those customers to induce or encourage them to engage in strikes or refusal to handle the plaintiff's freight, and if you further find that one of the objects thereof was to cause such customers to cease doing business with the plaintiff, you will answer the first issue yes.

\*　　\*　　\*　　\*　　\*　　\*

In determining any issue involving the intent or object of the union you may consider all the facts and circumstances in evidence in the case which may aid the jury in its determination of the states of mind of the union's representatives in this case.

The Court tells you it is not necessary that the evidence in this case establish that the only object or purpose of intent of the defendant union with respect to the employees or persons doing business with the plaintiff was to require or force them to cease doing business with the plaintiff. A labor organization may have many different reasons for communicating or dealing with the employees of a business concern, and all of these reasons may in varying degrees prompt the conduct of the union with respect to such employees. It is sufficient if one of the objects or purposes of the defendant union in any communication or dealing with the employees of customers or the plaintiff was to require or force such customers to cease doing business with the plaintiff.]

The Union alleges that the two bracketed portions cannot be reconciled. Upon proper contextualization of these passages, the Court disagrees. The first bracketed passage deals with the definition of *primary* ambulatory picketing and states that legal primary picketing is not rendered illegal by union members' ultimate desires. See Local 761 IUE v. NLRB, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961). The second bracketed passage is a definitional discussion of § 303(a) which proscribes, *inter alia, secondary* picketing. See *Local 761, IUE,*

*supra.* The two passages are uncontradictory. Any ambivalence which is produced by the juxtaposition of these passages is merely caused by the fact that, "Important as is the distinction between legitimate 'primary activity' and banned 'secondary activity' it does not present a glaringly bright line." *Local 761, IUE, supra,* at 673, 81 S.Ct. at 1289. The Court is satisfied its statement of the law as given to the jury was accurate.

The defendant takes exception as well to jury charges on the question of damages. In light of the Court's aforementioned determination in that regard, said exceptions are rendered moot.

The motion for judgment N.O.V. will be denied. The Court will strike the jury award on damages and direct a retrial solely as to that issue.