**GREAT COASTAL EXPRESS, INC., Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, an unincorporated association, Defendant.**

**Civ. A. No. 5–71–R.**

United States District Court, E. D. Virginia, Richmond Division.

Feb. 29, 1980.

James M. Minor, Jr., Minor, Forb & Batzli, P. C., Lee B. Forb, Richmond, Va., J. W. Alexander, Jr., Blakeney, Alexander & Machen, Charlotte, N. C., for plaintiff.

Peter Hafner Jost, Alexandria, Va., Sidney Dickstein, Ira R. Mitzner, Barry Wm. Levine, Kenneth M. Simon, Washington, D. C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The instant controversy between these parties evolves from litigation first commenced in December, 1970 by Great Coastal Express, Inc. ("Great Coastal" or "the Company"), against the International Brotherhood of Teamsters, etc. ("IBT" or "the Union"). As more fully developed, *infra*, the action resulted in a judgment for Great Coastal in the amount of $806,093. The parties are now before the Court on the Union's motion to set aside the aforementioned judgment. Also pending is IBT's motion for further argument in the case.

Great Coastal is an interstate truck carrier based in Richmond, Virginia. At all times relevant to this action the Company's primary business was the shipment of general commodity freight from twenty-six Virginia counties to New Jersey and parts of New York, Pennsylvania and Connecticut. IBT is a labor organization within the meaning of 29 U.S.C. § 152(5).

The Court is of the opinion that post-hearing argument is unnecessary and, accordingly, the Union's motion to that effect must be denied. The issues raised by IBT's motion to set aside judgment have been addressed in post-judgment discovery and the evidentiary hearing which was conducted on July 12, and 13, 1979. The Union has submitted Proposed Findings of Fact and Conclusions of Law. Great Coastal tendered a Proposed Memorandum decision and draft order. It is thus apparent that the parties have had ample opportunity to present their arguments. While the implications of the Union's motion are grave, the legal issues are fairly settled and additional argument would thus not be of great benefit. The motion to set aside judgment is deemed ripe for disposition and, for reasons which follow, also must be denied.

## I. HISTORY OF THE LITIGATION

A full appreciation of the issues presently decided rests upon an understanding of the various stages through which this controversy has progressed.

Prior to the difficulties which precipitated this action, the parties were signatories to the National Master Freight Agreement. Great Coastal's participation under that contract terminated on March 31, 1970. Negotiations between the Company and IBT after the expiration of that contract reached an impasse and a strike against Great Coastal was begun in August, 1970.

Great Coastal thereafter commenced suit in the Law and Equity Court of the City of Richmond, Virginia during December, 1970. IBT subsequently removed the action pursuant to 28 U.S.C. § 1441(b) contending that plaintiff's allegations purported to state a claim under sections 301 and 303 of the Labor Management Relations Act, 29 U.S.C. §§ 185 and 187.

The case was tried before a jury on June 14, 15, 16, 19 and 20, 1972. The Company argued that the Union had engaged in two species of illegal strike activity. First, Great Coastal contended that the Union had committed acts of violence, primarily in damaging the Company's equipment. Additionally, Great Coastal argued that the Union had engaged in unlawful secondary boycotting activities.

From the outset, IBT objected to the introduction of evidence concerning acts of violence. Great Coastal was permitted to proceed with evidence of this claim upon the Company's proffer that it would ultimately be linked to the Union. At the close of Great Coastal's case, however, it was apparent that the proffer had not been satisfied. Accordingly, a directed verdict was entered in favor of IBT with respect to all claims arising from the alleged acts of violence.

The claim of illegal boycotting was, however, submitted to the jury. The Company presented its claim through the testimony of its customers and employees, the president of the IBT Richmond Local and an international director of the Union. The jury returned a verdict in favor of the Company in the amount of $1,300,000, an amount which the Court concluded was in excess of that which was proper.

The Union moved for judgment n.o.v.; which motion was denied. The verdict was, however, set aside as being excessive. The Court was also of the view that the jury's award reflected, at least in part, an influence from the evidence of the violence. *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 350 F.Supp. 1377, 1380 (E.D.Va.1972). The Court was not persuaded, however, that the violence evidence tainted the jury's determination of liability for secondary boycotting. *Id.* at 1382.

A second jury trial was held on April 19 and 20, 1973. The sole question in issue was the amount of damages sustained by Great Coastal as a result of the Union's secondary boycotting activities. This jury awarded Great Coastal $806,093 and judgment was entered upon that verdict.

The parties thereafter filed cross appeals in the United States Court of Appeals for the Fourth Circuit. Great Coastal contended that the Court committed error in granting a directed verdict on the claims arising from the alleged violence. The Company urged this issue upon the Appellate Court conditionally; it sought consideration only if the Fourth Circuit did not affirm the judgment on the secondary boycotting claim. The judgment was affirmed and the question was thus not considered.

Especially relevant for purposes of the instant motion was IBT's contention before the Fourth Circuit that the first jury's determination of liability for secondary boycotting had been infected by the evidence of violence. The Fourth Circuit's opinion in this regard is instructive, although from the Court's view would not, in any event, alter the instant decision.

The Fourth Circuit specifically found that the presumption in favor of the jury's verdict had not been overcome. *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 511 F.2d 839, 847 (4th Cir. 1975). The Appellate Court noted that the jury had been instructed not to consider the evidence of violence. The Court further found that the determination of liability was supported by "admitted and abundant evidence." *Id.* The Court also opined that the first jury's excessive award was as likely the result of confusion as it was prejudice from the evidence of violence. *Id.*

The Union's writ of certiorari was denied by the United States Supreme Court, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976), and the matter was considered ended until the filing of the instant motion.

## II. THE EVIDENTIARY HEARING

Following the completion of post-judgment discovery, the Court held an evidentiary hearing on July 12 and 13, 1979. The most relevant testimony given at this hearing concerned what came to be known as the "New Kent" incident.

The Court heard the testimony of Robert G. Seward, a Great Coastal driver, at the first trial of this matter in 1972. Seward then testified that during the strike he was driving company equipment near New Kent, Virginia when unidentified persons hurled a brick through the windshield and shot the cab with a small caliber gun. Great Coastal terminal manager William P. Funai testified that he had seen the damaged truck but had no personal knowledge of the incident. This version of the New Kent incident was reported to the police and the National Labor Relations Board, as well.

Seward testified at the evidentiary hearing that his 1972 testimony was false. Seward's present version of the New Kent incident is that he inflicted the damage to the rig upon Funai's direction. The evidentiary hearing also heard Funai admit that a portion of his 1972 testimony was not truthful.

Other evidence was adduced at the 1979 hearing. The additional evidence falls into two categories. First, there was evidence tending to show the Company's reliance upon other perjured testimony or false evidence. Second, there was evidence of fraud unrelated to the instant controversy which was offered for the purpose of showing the Company's motive or intent.

IBT filed the motion presently under consideration; premised on allegations which were supported by the aforementioned evidence. It should be reiterated that the evidence of fraud related to this litigation was entirely concerned with perjury and fabricated evidence. In light of the character of the evidence, and the Court's understanding of the standard for relief, it is unnecessary to address the evidence in greater detail.

The Union's motion is predicated upon allegations of a fraud upon the Court and what are said to be "other reasons justifying relief." In addressing those claims the Court deems it necessary to first consider the scheme of Fed.R.Civ.P. 60(b). To fully explicate the Court's view of the issues involved it will also be necessary to consider Fed.R.Civ.P. 60(b)(3) and the availability of relief by independent action.

## III. FEDERAL RULES CIVIL PROCEDURE 60(b)

Rule 60(b) Fed.R.Civ.P. sets forth grounds upon which a party may be relieved from the operation of a judgment. The Rule was amended in 1946 in an attempt to reconcile what has been described as conflicting values. The first is embraced by the doctrine of finality which the law attaches to judgments. Additionally, the amendment sought to recognize and provide a vehicle for relief from judgment in appropriate cases.

The result of the attempt to reconcile the aforementioned values is, not surprisingly, a balancing process. For example, fraud *inter partes*, however it may be characterized, is ground for relief within a year of judgment. Until the expiration of that one year period the second value predominates. Thereafter the balance shifts toward finality.

Rule 60(b) also recognizes the Court's inherent power to set aside its judgment when a fraud has been practiced upon the Court. Here the determinative question involves characterizing the species of fraud presented.

■ Finally, Rule 60(b) preserves the Court's power to entertain an independent action to set aside the judgment. The independent action rests upon the Court's equitable jurisdiction, *Sayers v. Burkhardt*, 85 F. 246 (4th Cir. 1898), *cert. denied*, 172 U.S. 649, 19 S.Ct. 886, 43 L.Ed. 1183 (1899) and has long been an accepted part of our jurisprudence. *See e. g., Marine Insurance Company v. Hodgson*, 7 Cranch 332, 3 L.Ed. 362 (1813).

A. *Rule 60(b)(3)*

It is readily apparent that the Union's motion could have been embraced by Fed.R. Civ.P.' 60(b)(3). That portion of Rule 60 provides:

On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) . . . (2) . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . . .

A 60(b)(3) motion must be made, however, "not more than one year after the judgment." *Id.* Judgment was entered against IBT in 1973 and affirmed by the United States Court of Appeals for the Fourth Circuit in 1975. The records reflect that the instant motion was not filed until 1978.

■ The Court may accept the Union's allegations as establishing the use of perjured testimony and false evidence. Relief would be precluded under 60(b)(3) even under that assumption, however, by virtue of the untimely filing of the motion. It may also be questioned whether the Union would have been entitled to relief upon proven fraud raised by timely motion in light of the decisions by this Court and the United States Court of Appeals for the Fourth Circuit that the evidence of violence introduced in the original trial did not affect the determination of liability for secondary boycotting. It is to be noted, however, that the Union's allegations, if factual, relate to a fraud within the purview of Rule 60(b)(3).

B. *Rule 60(b)(6)*

The Union was undoubtedly aware that a Rule 60(b)(3) motion was untimely. It thus, understandably, premised its motion on Fed.R.Civ.P. 60(b)(6) and the fraud which was alleged to have been perpetrated upon the Court. The Court next considers the availability of relief under Rule 60(b)(6).

■ Subparagraph six authorizes a court to relieve a party from the operation of a final judgment "[for] any other reason justifying relief." This provision follows the enumeration of five specific grounds for relief and thus may be properly viewed as a residuary clause intended to encompass contingencies which could not have been foreseen by the Rule's drafters. 7 J. Moore, *Federal Practice* § 60.27(1). A motion under Rule 60(b)(6) need only be made within a reasonable time.

■ It thus appears that there are two prerequisites to relief under Rule 60(b)(6). It may be assumed that IBT's motion was made within a reasonable time following the final judgment in this matter. The motion fails to state a proper claim for relief, however, because it does not rest upon "any *other* reason" than those specified in the preceding five subparagraphs of the Rule. (Emphasis added). The allegations of the Union and its proof adduced at the evidentiary hearing demonstrate, at most, grounds for relief under Rule 60(b)(3).

In *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), the petitioner challenged a judgment, entered by a district court several years earlier, revoking his citizenship. The government contended that petitioner had, at most, shown "excusable neglect" which could be the basis for relief under Rule 60(b)(1), but for the applicable one year limitation. In this regard the Court stated:

It is contended that the one-year limitation bars petitioner on the premise that the petition to set aside the judgment showed, at most, nothing but "excusable neglect." And, of course, the one-year limitation would control if no more than "neglect" was disclosed by the petition. *In that event the petitioner could not avail himself of the broad "any other reason" clause of 60(b).* 335 U.S. at 613, 69 S.Ct. at 389. (Emphasis added).

*See also* 335 U.S. at 614–15, 69 S.Ct. at 390 where the Court further distinguishes Rule 60(b)(1) to (5) from 60(b)(6). It is apparent that the phrase "any other reason" is to be accorded its usual meaning; especially in light of the fact that it follows the enumeration of five specific grounds for relief.

*See also Stancil v. United States*, 200 F.Supp. 36 (E.D.Va.1961) (relief under 60(b)(5) precluded when properly raised under 60(b)(1) but for the one-year limitation) and cases cited at n. 18 in 7 J. Moore, *Federal Practice*, § 60.27(1).

IBT previously cited *Stradler v. Hall*, 20 F.R.Serv.2d 531 (4th Cir. 1975) to the Court in connection with a question related to the instant motion. In *Stradler* the Court granted summary judgment in April, 1974 and the Rule 60(b) motion was filed in June, 1974. The Court held that the movant could proceed under both 60(b)(1) and 60(b)(6). It should be noted, however, that the Court in *Stradler* was not presented with the preclusive effect of the one-year limitation of 60(b)(1). It does not, therefore, present a reason for distinguishing *Klapprott, supra* and thus does not affect the Court's analysis.

Rule 60(b)(6), on its face, necessitates a ground for relief distinct from those provided in the preceding five subparagraphs. The Court is of the view that IBT's contention must be rejected for an additional reason. Were the Court to afford 60(b)(6) relief in a situation encompassed by 60(b)(3), the one-year limitation of the latter provision would become meaningless. The Court cannot adopt an interpretation which is in obvious conflict with the Rule's framework. The motion under Rule 60(b)(6) thus must be denied.

### C. *Fraud Upon The Court*

Fed.R.Civ.P. 60(b) recognizes the Court's inherent power to grant relief from judgment when the Court has been subjected to a fraud. Fraud upon a court is a matter which is so grave that the rules permit relief to be afforded without regard to any time limitation. In fact, a successful movant may be relieved from a judgment procured through fraud upon the court even though the movant has been guilty of laches. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Because the instant motion falls beyond the one-year limitation of Rule 60(b)(3) it is necessary to consider whether the alleged fraud, as grave as it is, rises to that properly denominated as "fraud upon a court." Failure to make the necessary distinction would, as noted *supra*, emasculate the one-year limitation.

The Court is satisfied that the fraud alleged by IBT would only have been perpetrated upon the Union rather than upon the Court. "Fraud upon the court" should embrace only that species of fraud which interferes with the court's discharge of its judicial functions. The most blatant examples of such fraud are bribery or corruption of the court, its officers or the jury. *See* 7 J. Moore, *Federal Practice*, § 60.33 and cases cited at n. 40. A persuasive definition of "fraud upon the court" emphasizes that the term should:

> Embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud *inter partes*, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action. Id. at 515.

Perjured testimony and false evidence obviously interfere with the court's role in discovering the truth. That alone does not, however, "defile the court itself." The above-quoted passage and its analysis is consistent with the views of many of the Circuit Courts of Appeal. *Pfizer, Inc. v. International Rectifier Corporation*, 538 F.2d 180 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *Vandervoort v. Vandervoort*, 529 F.2d 424 (5th Cir. 1976); *Wilkin v. Sunbeam Corporation*, 466 F.2d 714 (10th Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258 (1973); *Kupferman v. Consolidated Research and Manufacturing Corporation*, 459 F.2d 1072 (2d Cir. 1972); and *Kenner v. Commissioner*, 387 F.2d 689 (7th Cir.), *cert. denied*, 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968). The Court has been unable to find, and neither party has cited, a case decided by this Circuit expounding

upon the phrase "fraud upon the court." The Court, based upon its reading of the precedent, is satisfied that this Circuit would also find Moore's discussion persuasive.

The Union has urged *Hazel-Atlas, supra* upon the Court as the legal basis for finding that the alleged fraud would be remediable. *Hazel-Atlas* evolved from a patent infringement suit commenced by Hartford-Empire. Hartford-Empire officers, with the participation of their attorney, fraudulently secured false evidence which was relied upon in obtaining the patent in question and in prosecuting an appeal before the Seventh Circuit. The Court held that the Circuit Court had inherent power to set aside its judgment as well as that entered by the district court pursuant to the Circuit Court's remand.

Although the dicta of *Hazel-Atlas* is sufficiently broad to encompass the fraud alleged in the instant matter, the actual situation there presented is distinguishable. The fraud of *Hazel-Atlas* included the participation of the Hartford-Empire attorney—an officer of the court. *Hazel-Atlas*, viewed in this light, is consistent with the formula advanced by Moore. In fact, the court stated:

> This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. *Id.* 322 U.S. at 245, 64 S.Ct. at 1001.

The Court has reviewed IBT's proposed findings of fact and conclusions of law and has found nothing therein advocating a finding by the Court that would implicate Great Coastal's attorneys in the fraud, nor indeed has any evidence leading to such a conclusion been introduced. There is thus no basis for finding a fraud upon the Court. Indeed, much of the *Hazel-Atlas* dicta relied upon by IBT related to the court's power to grant relief *once it has been shown that a fraud was perpetrated upon the court.*

Applying the *Hazel-Atlas* dicta in accordance with IBT's interpretation of the opinion would require the Court to conclude that *Hazel-Atlas* overruled or modified its precedent, *sub silentio.* It is clear that this was not the Court's intent for *Hazel-Atlas* was said to rest upon "settled equitable principles." 322 U.S. at 247, 64 S.Ct. at 1001. Neither the fact that the fraud involved a scheme or affected a broader public interest than merely the outcome of the litigation are alone sufficient to justify the *Hazel-Atlas* decision nor afford relief in the instant case. Those factors are presented in *Throckmorton, infra* and yet relief was denied.

In short, the Court is of the opinion that the participation of the attorney, an officer of the court, was the impetus for elevating fraud *inter partes* to a fraud upon the court. The Union having shown at best fraud *inter partes* is not entitled to relief upon this basis.

### D. *The Independent Action In Equity*

Fed.R.Civ.P. 60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . ." A motion under Rule 60(b) may properly be treated as the commencement of such an independent action. *H. K. Porter Company v. Goodyear Tire and Rubber Company,* 536 F.2d 1115 (6th Cir. 1976); *Bankers Mortgage Company v. United States,* 423 F.2d 73 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). While not treated as such by IBT, the Court has considered whether the Union's allegations and proof provide a sufficient ground for relief. Here, too, the dispositive issue is the type of fraud which will support an independent action.

In *United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878), it was contended that a predecessor in title had perfected same through a fraudulently antedated document showing a grant from the Mexican government. In resolving the controversy the court was required to balance the competing values of finality of judgment and preventing a party from benefiting from his fraud. The court held that only extrinsic fraud, and not intrinsic fraud, would support an independent action to set aside a judgment.

The court noted that whether in law or equity, a direct appeal lies to correct errors of both the court and the jury. Finality of judgment is not disturbed since the review is a continuation of the original action. But after the exhaustion or foreclosure of direct review, the challenge to the judgment is no longer part of the original suit and, hence, finality must be afforded some measure of protection.

■ At that point finality is given the highest priority under all but exceptional circumstances, because:

> The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses . . . would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases. 98 U.S. at 68–69.

The exception for which finality is superseded by individual justice is, in the case of fraud, extrinsic fraud.

Extrinsic fraud, while often difficult to distinguish from intrinsic fraud, is characterized as a fraud collateral to the issues before the court. It would include, *inter alia*, a party keeping his adversary or his witnesses away from court, a false promise of compromise or the breach of any attorney's loyalty to his client. The aforementioned examples of extrinsic fraud share a common denominator which justifies the exception: Extrinsic fraud prevented there ever being an adjudication of the issues joined.

The Union's allegations relate merely to the possible commission of intrinsic fraud by Great Coastal. The Company's fraud would have related to the matters in controversy, *i. e.*, the violence claim. Nor can it be said that any effort by the Company to conceal the fraud and hence, evidence suitable for impeachment, prevented a true adjudication of the issues. To adopt that reasoning would permit the exemption to swallow the rule.

It has been suggested that *Throckmorton, supra* was expanded to include intrinsic fraud in *Marshall v. Holmes*, 141 U.S. 589,

12 S.Ct. 62, 35 L.Ed. 870 (1891). In this regard, the Court notes that the *Marshall* case may strictly be cited only for its ruling on removal procedure and aggregation of claims for purposes of federal jurisdiction. The discussion pertaining to fraud was mere dictum.

The Court does not share the commentator's concern over the *Marshall* dicta and its effect upon the vitality of *Throckmorton.* The passage which created the apparent conflict quotes *Marine Insurance Co., supra*, 7 Cranch, at 336 stating:

> It is the settled doctrine that "any fact which clearly proves it to be against conscience to execute a judgment, *and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud* or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." (Emphasis added). *Marshall, supra*, 141 U.S. at 596, 12 S.Ct. at 64.

The Court is of the view that the emphasized portion, which is conjunctive with the unconscionability element, comports with the notion of extrinsic fraud and is thus not inconsistent with *Throckmorton.*

■ Of greater import is the decision of *Aetna Casualty & Surety Company v. Abbott*, 130 F.2d 40 (4th Cir. 1942). In *Aetna* the rule was set forth for this Circuit:

> Even if the language be construed as charging that the judgment sued on was procured by means of perjured testimony, this would not be sufficient; for it is well settled that this constitutes no ground upon which the court could disregard the judgment or deny its enforcement in an independent proceeding. *The frauds which justify such action in an independent proceeding between the same parties or their privies are those which are extrinsic or collateral to the matter tried, and not frauds, such as perjured evidence,* which were "actually presented and considered in the judgment assailed." *United States v. Throckmorton*, 98 U.S. 61, 66, 25 L.Ed. 93. (Emphasis added, other citations omitted).

The Union having shown at best intrinsic fraud, may not prevail in an independent action to set aside the judgment in this case.

## IV. CONCLUSION

For the aforementioned reasons, the Court concludes that IBT is not entitled to the relief it seeks. Assuming arguendo that the allegations of fraud are factual, it is clear that Rule 60(b)(3) would have been an appropriate vehicle for seeking relief. As the Court has already indicated, relief under Rule 60(b)(3) is, however, foreclosed at least on account of the one year limitation. Fraud embraced by Rule 60(b)(3) may not be considered a proper basis for relief under Rule 60(b)(6). The Union's allegations can neither be characterized as contending that a fraud was committed upon the Court, nor as the perpetration of an extrinsic fraud. IBT's motion for relief from judgment must, therefore, be denied.