477 P.2d 823

James Franklin MOORE, II, a/k/a James Franklin Moore, Jr., Plaintiff-Appellant and Cross-Appellee,

v.

Richard G. BEAN, Executor of the Last Will and Testament of Frank Moore, Deceased, Texas Scottish Rite Hospital For Crippled Children, a corporation, Defendants-Appellees,

v.

SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, a corporation, Defendant-Appellee and Cross-Appellant,

State of Texas, Intervenor-Appellee.

No. 9053.

Supreme Court of New Mexico.

Nov. 9, 1970.

Rehearing Denied Dec. 22, 1970.

James F. Moore, II, pro se.

Richard G. Bean, Roswell, pro se.

Atwood, Malone, Mann & Cooter, Rufus E. Thompson, Roswell, for Texas Scottish Rite Hospital.

Walker, Choate & Walker, Dallas, Tex., for Texas Scottish Rite Hospital.

**190**

Frazier, Cusack & Schnedar, Roswell, for Shriners Hospitals for Crippled Children.

Marvin Sentell, Asst. Atty. Gen. for State of Texas, Austin, Tex., for Intervenor State of Texas.

OPINION

WATSON, Justice.

James Franklin Moore, appellant's father, died on April 23, 1969. By his will dated January 31, 1969, he bequeathed $10.00 to appellant and the residue of his estate to the "Shriners' Hospital for Crippled Children, in Dallas Texas." There being no hospital by that precise name in Dallas, appellant brought suit to establish a lapsed gift. In appellant's amended complaint, appellee Texas Scottish Rite Hospital for Crippled Children, which is located in Dallas, Texas, was made a defendant, and there was an intervention by Shriners Hospitals for Crippled Children, Inc., a Colorado non-profit corporation, hereinafter referred to as "Shriners Hospitals," which operates 19 hospitals for crippled children and three hospitals for burned children (but none in Texas). Both the Colorado Shriners corporation and the Texas Scottish Rite Hospital claimed the residue.

From a judgment in favor of the Texas Scottish Rite Hospital, plaintiff Moore appeals, and the Shriners Hospitals cross appeal.

The pertinent findings of the trial court are as follows:

"7. The Texas Scottish Rite Hospital for Crippled Children is located in Dallas, Texas, originally established and constructed by the Shriners of Dallas' Hella Temple and chartered as a charitable corporation under the laws of the State of Texas on September 15, 1921, as the 'Hella Temple Children's Hospital' for the treatment of crippled children.

"8. 'Shriners' are members of the Masonic order known as the Ancient Arabic Order of Nobles of the Mystic Shrine, but a Mason is not eligible for membership therein until he has received either the 32° from the Masonic order known as the 'Scottish Rite' or the similar degree from the Masonic order known as the 'York Rite.'

"9. The Testator first joined the Dallas Masonic Lodge No. 760 in 1922 at a time when he resided in Dallas. He thereafter moved from Dallas to Roswell, New Mexico, in 1932, but returned to Dallas to join the Dallas Scottish Rite Consistory, wherein the 32° was conferred upon him on November 7, 1935. He joined the Hella Temple of the Shrine in Dallas on November 8, 1935.

"10. Although the Testator continued to reside in Roswell from 1932 until his death, he remained a member of all three Dallas Masonic orders and did not transfer his Masonic affiliations at any time during his lifetime. It did not appear that the Testator was ever active in Masonry.

"11. Subsequent to the founding of the Shriners' hospital for crippled children in Dallas in 1921, the Shriners of Dallas' Hella Temple became unable to pay the costs incurred by them in its construction, as well as the operating and maintenance costs thereof, and so, on May 1, 1926, relinquished all interest and control therein to the 'Scottish Rite.' The name of the hospital and charitable corporation originally chartered as the 'Hella Temple Children's Hospital' was then changed to the 'Texas Scottish Rite Hospital for Crippled Children.' This same hospital has continued its charitable assistance to crippled children, without interruption, since its doors were opened in 1921.

"12. Throughout the years there has been a very close relationship between the Shriners of Dallas' Hella Temple and the hospital known officially today as the 'Texas Scottish Rite Hospital for Crippled Children.'

"13. It was the Testator's intent to bequeath and devise the residuary por-

tion of his estate to a 'hospital', for 'crippled children' in 'Dallas, Texas', and the hospital so named by him was one thought of by him as supported by the 'Shriners.'

"14. There was cause for confusion as to whether or not the hospital known officially today as the 'Texas Scottish Rite Hospital for Crippled Children' was supported by the Shriners.

"15. The Testator used the word 'Shriners'' in his Last Will and Testament as descriptive of what he thought to be the Masonic affiliation of the hospital for crippled children in Dallas, Texas and not as part of that hospital's official name.

"16. The Testator intended the residuary portion of his estate to go to the hospital in Dallas known officially today as the 'Texas Scottish Rite Hospital for Crippled Children.'

"17. The testator had a general charitable intent and purpose in the disposition of his estate.

"18. The Testator intended the residuary portion of his estate to go to a Masonic hospital assisting crippled children in Dallas, Texas.

"19. The Texas Scottish Rite Hospital for Crippled Children is the only Masonic hospital for crippled children in Dallas, Texas."

We first consider the contentions of the Shriners Hospitals. They attack findings 13, 15, 16, 17, and 18, claiming that there is no evidence in the record of what the testator thought or of his intent. Shriners Hospitals also point out that finding 14 does not state that the testator was confused, and that neither finding 7 nor finding 11 states that the testator knew the facts therein set forth. Furthermore, Shriners Hospitals object to the trial court's refusal to give its requested finding 10 and their conclusions to the effect that the testator intended to will the residue to them or to an institution connected with them. Their refused finding 10 reads as follows:

"That the Texas Scottish Rite Hospital for Crippled Children has given wide publicity to its activities, and its distinction from the Shriners Hospitals for Crippled Children; that it solicited contributions from all members of the Dallas Scottish Rite Bodies, including the decedent, mailing with such solicitations checks payable to the Texas Scottish Rite Hospital for Crippled Children, or payable to a prominent person with a letter asking that members of the Scottish Rite join him in supporting said Defendant by making a contribution, but no contribution was ever received from Frank Moore."

Appellee Texas Scottish Rite Hospital states that the requested instruction was properly refused, as the only evidence as to testator's failure to contribute to their hospital was from records subsequent to 1962, and that, in addition, the finding was not of an ultimate fact but states only evidentiary facts contrary to Rule 52(B) (a) (2) [§ 21–1–1(52) (B) (a) (2), N.M. S.A., 1953 Comp.]. McCleskey v. N. C. Ribble Company, 80 N.M. 345, 455 P.2d 849 (Ct.App.1969); Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968). This requested finding fails to relate the facts stated therein to the testator's intent. It is a recital of facts rather than a conclusion of fact. See International Minerals & Chemical Corp. v. New Mexico Public Service Comm., 81 N.M. 280, 466 P.2d 557 (1970). As we understand it, cross-appellant Shriners Hospitals' objection to the court's findings 7, 11, and 14 is of the same nature, i. e., they are mere recitals of fact rather than conclusions of fact.

Where determinative findings are supported by substantial evidence, refusal of requested findings to the contrary is not error. International Minerals & Chemical Corp. v. New Mexico Public Service Comm., supra; see Board of Education, School District 16 v. Standhardt, 80 N.M. 543, 458 P.2d 795 (1969); Maryland Casualty Company v. Foster, 76 N.M. 310, 414 P.2d 672 (1966); Save-Rite Drug Stores,

Inc. v. Stamm, 58 N.M. 357, 271 P.2d 396 (1954).

The determinative issue on this appeal, however, is whether the evidence is sufficient to identify the object of the testator's bounty. See 4 Page on Wills § 32.2 (Bowe-Parker Rev. 1961). The Shriners Hospitals have not objected to the extrinsic evidence offered to prove the identity of this object; they simply contend that the evidence points to them as the beneficiary. The extrinsic evidence here is undisputed. It consists of the testator's background and the relevant circumstances which would reflect on his outlook at the time his will was drawn in order to explain the words he used in that document. The trial court, from this evidence, could draw reasonable inferences as to the testator's intent. We must review the evidence by resolving all reasonable inferences in support of the judgment and disregard evidence and inferences to the contrary. Jones v. Anderson, 81 N.M. 423, 467 P.2d 995 (1970); Totah Drilling Company v. Abraham, 64 N.M. 380, 328 P.2d 1083 (1958). As between the appellee and cross-appellant, we are convinced that the evidence, together with the reasonable inferences therefrom, is sufficient to sustain the trial court's findings 13, 15, 16, 17, and 18, and to justify rejection of the Shriners Hospitals' tendered finding 10 and their conclusions to the contrary. This also disposes of the Shriners Hospitals' contention that the words, "in Dallas, Texas," are mere surplusage. We discuss this further below in considering appellant Moore's position.

First, appellant Moore contends that neither group can receive the bequest because neither is chartered in New Mexico, nor has New Mexico removed the common law prohibition against corporations receiving testamentary gifts. This contention cannot be considered, however, as it was not raised below. Supreme Court Rule 20(1) [§ 21–2–1(20) (1), N.M.S.A., 1953 Comp.]; DeVilliers v. Balcomb, 79 N.M. 572, 446 P.2d 220 (1968); Maryland Cas-

ualty Company v. Foster, supra. But appellant Moore's principal contention is that the residuary clause of the will must fail because the beneficiary cannot be identified; that from the face of the will and from all of the evidence introduced, the uncertainty cannot be resolved, and that to find the testator intended to make, or thought he was making, the bequest to the appellee, is pure speculation.

The name by which the residuary beneficiary is identified in the will is nearly identical with that of cross-appellant Shriners Hospitals for Crippled Children, except possibly for "Inc.," and the fact that testator used "hospital" in the singular instead of plural. The will, however, adds "in Dallas, Texas," and we must consider all of the words within the four corners of the will. Gregg v. Gardner, 73 N.M. 347, 388 P.2d 68 (1963). It is conceivable that under different circumstances the court might have found that it was not the testator's intent to provide for a beneficiary in Dallas, Texas, even though those words were used in the will. Testators have been known to make mistakes in addresses. Wachovia Bank & Trust Co. v. Plumtree School for Boys, 229 N.C. 738, 51 S.E.2d 477 (1949). On the other hand, beneficiaries are sometimes identified by the address or location indicated in the will. 4 Page on Wills, supra, § 34.39; Kovar v. Kortan, 3 Ohio Misc. 63, 209 N.E.2d 762 (1965). Here the trial court determined the mistake was in the name rather than the location, and we believe such was a logical and permissible deduction from the facts and was supported by substantial evidence. Tapia v. Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967); Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640 (1940).

Cross-appellant Shriners Hospitals points out that appellee hospital is only available to residents of Texas, while it and its affiliates are available to crippled children of all states. It asks, "Why would the testator, after residing in New Mexico for 37 years, wish to provide for Texas Chil-

**193**

dren only?" Once the identity of the beneficiary has been established, as it has been in this case, no ambiguity remains, and even though the testator may have intended that the bequest benefit children of all states, it is improper at this point to speculate as to what the testator would have done had he known of this limitation on appellee's activities, for such would amount to rewriting the will for him. In re France's Estate, 64 Wash.2d 703, 393 P.2d 940 (1964); See also Gregg v. Gardner, supra; Lamphear v. Alch, 58 N.M. 796, 277 P.2d 299 (1954).

Appellant Moore relies upon American Cancer Soc., Mo. Div. v. Damon Runyon Memorial Fund, 409 S.W.2d 222 (Mo.App. 1966), where a bequest in joint wills was left to the "Damon Runyon Memorial Fund for Cancer Research, St. Joseph, Missouri Chapter," and there was none in St. Joseph. The local county chapter of the American Cancer Society claimed the bequest, but the appellate court felt that the testators' complete familiarity with that organization made it inconceivable that they could have named the other organization while meaning the American Cancer Society, and that it was just as unlikely that their bequest, which they intended to make locally, was to be sent to the Damon Runyon organization which had only a New York office. The appellate court held that to find, from the evidence there submitted, a testator's intent to give to either of the organizations would be speculation and conjecture, and that the legacy must lapse.

In the present case the evidence seems almost conclusive that the testator intended the gift to go to either the appellee or appellant, Shriners Hospitals. The better rule is that even though the name and description seem to fit another claimant with greater exactness, nevertheless the gift would go to the claimant with whom the testator was the most familiar or in whom he was most interested. Northern Trust Co. v. Perry, 105 Vt. 524, 168 A. 710 (1933). See also Annot., 94 A.L.R. 7 (1935).

When the testator's intent is uncertain, this rule should be applied. Gregg v. Gardner, supra. Here, however, as we have held above, the court resolved the testator's intent from the extrinsic evidence, so that it cannot be said that testator's intent was uncertain. Thus appellant Moore's argument is inapplicable in this case.

No error having been established, the judgment of the trial court must be affirmed.

It is so ordered.

COMPTON, C. J., and McKENNA, J., concur.