755 P.2d 583

Jose Manual MOYA, aka Manuel Moya, and Adeline B. Moya, Plaintiffs–Counter–Defendants–Appellees and Cross–Appellants,

v.

The CATHOLIC ARCHDIOCESE OF NEW MEXICO, et al., Defendants,

v.

Ronald J. VAN AMBERG and Leof T. Strand, Defendants, Intervenors–Counter–Claimants, Cross–Claimants, Appellants and Cross–Appellees,

v.

Jose de la LUZ, aka Joe Moya, Defendant–Cross–Defendant–Appellant and Cross–Appellees.

No. 16592.

Supreme Court of New Mexico.

June 1, 1988.

Rehearing Denied June 27, 1988.

Robert Suzenski, Scottsdale, Ariz., Catherine Aguilar, John Aragon, Santa Fe, for appellant.

James V. Noble, Jr., Ruben Rodriguez, Santa Fe, for plaintiffs-appellees.

## OPINION

STOWERS, Justice.

This appeal arises from a quiet title action that has been pending, in the District Court of Santa Fe County and in this Court, since 1977. Although an outline of the facts pertaining to this excessively protracted litigation will be necessary, the critical events occurred in the summer and fall of 1977 and in the fall of 1978. On August 8, 1977, the district court entered a default judgment quieting title in the subject real property in Jose Manuel Moya and his wife Adeline Moya (plaintiffs) against Jose Manuel Moya's brother, Jose de la Luz Moya (defendant), their three siblings, and their mother. Defendant timely moved the district court to set aside the default judgment as to him, alleging that he had not received proper notice of the action. After a hearing, the district court denied defendant's motion, and he appealed. About one year later, this Court reversed, holding that defendant's fundamental due process right to notice of the proceedings against him had not been met where rolled-up copies of

the summons and complaint had been left attached to the door handle of his front screen porch but were found, months later, under a couch on that porch. *See Moya v. Catholic Archdiocese,* 92 N.M. 278, 587 P.2d 425 (1978). We remanded the case with instructions for the district court to set aside the default judgment as to defendant and to proceed to determine his claim of interest in the real property. *Id.,* 92 N.M. at 280, 587 P.2d at 427.

After nearly nine years in litigation upon remand, this case returns to us on appeal from the district court's order granting a summary judgment determining the present parties' respective interests in the real property, denying defendant's motion to set aside a deed that he executed in the course of litigation, and denying plaintiffs' motion to reinstate the 1977 default judgment. Although the parties vigorously contest the propriety of the district court's ruling on each motion, we find one issue determinative of this appeal. We conclude that uncontradicted evidence shows that a fraud was worked upon this Court when defendant in 1978 procured our mandate reopening the default judgment as to him. In an exercise of our inherent power to grant relief in cases where fraud has been practiced upon the court, we order reinstatement of the default judgment entered in favor of plaintiffs on August 8, 1977.

The facts of this case must be reviewed briefly. The real property in question was owned by Frank Moya and was inherited by his widow and children. In 1976, before this quiet title action was initiated, plaintiffs were deeded the mother's interest. In 1977, plaintiffs obtained a default judgment quieting title in them as against all the siblings and the mother; upon our mandate, that judgment was set aside as to defendant. Upon remand, plaintiffs in 1979 obtained disclaimers of interest from the three other siblings and the mother, who had not appeared in the action. Defendant shortly thereafter obtained from the district court a default judgment against the three absent siblings and the mother.

Some two years later, in 1981, defendant deeded one-half of his interest in the property to Leof T. Strand and Ronald J. VanAmberg (intervenors), attorneys who were representing him in this action at that time. On May 4, 1982, defendant executed a disclaimer of any interest in the real property. He almost immediately moved, through counsel, to set the disclaimer aside, but the district court denied the motion. In June 1982, counsel moved to intervene in order to protect the interest defendant conveyed to them in 1981. They did not move to withdraw as counsel until April 1984, however, and the district court granted both motions in May 1984. Intervenors then filed a motion for summary judgment, but no ruling was invoked and discovery took place.

In the course of deposition testimony given in April 1986, defendant and his wife admitted that they had lied under oath years before at the hearing on the motion to set aside the 1977 default judgment. At that time, they testified that they had not found the summons and complaint attached to the handle of their front porch door the day the process server left them there, but that they had found the papers under a couch on the enclosed porch after the default judgment had been entered. In their undisputed April 1986 testimony, they stated that they in fact had discovered the papers attached to the door on the day they were delivered. Defendant testified that he had read the papers on that day, had understood them, but had not wanted to go to court. Defendant and his wife further asserted that they had testified falsely at the prior hearing in order to win the lawsuit.

On the basis of this deposition testimony, plaintiffs moved the district court to reinstate the 1977 default judgment. After a hearing, the district court denied that motion, denied defendant's motion to set aside his 1981 deed to intervenors, and issued a summary judgment awarding interests in the real property to plaintiffs and intervenors but not to defendant.

■ Notwithstanding the arguments raised on appeal by each party, we believe that it is the record of this case that demands our attention. The inherent power of a court to grant equitable relief from a judgment procured by fraud upon the court is beyond question. *Universal Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946); *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976); *Jemez Properties, Inc. v. Lucero*, 94 N.M. 181, 184 n. 1, 608 P.2d 157, 160 n. 1 (Ct.App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). This power is not subject to the procedural requirements for obtaining relief from final judgments, *see* SCRA 1986, 1–060(B), and may be exercised by the court of its own motion or on the motion or suggestion of a party or an interested person. *Bucy v. Nevada Constr. Co.*, 125 F.2d 213, 217 (9th Cir. 1942).

■ Fraud upon the court embraces only that species of fraud which does or attempts to defile the court itself or which is perpetrated by officers of the court so that the judicial system cannot perform in a usual manner. *Jemez Properties, Inc. v. Lucero*, 94 N.M. at 184 n. 1, 608 P.2d at 160 n. 1. Fraud upon the court occurs where there is a deliberately planned and carefully executed scheme to defraud the court, not simply a judgment obtained with the aid of a witness whose perjury is revealed by after-discovered evidence. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. at 246, 64 S.Ct. at 1001. The April 1986 deposition testimony of defendant and his wife reveals not mere perjury but a deliberate scheme to defraud the court; they committed fraud upon the court.

■ Furthermore, defendant and his wife successfully defrauded not the district court, which in 1977 denied his motion to set aside the default judgment, but this Court, which reversed that ruling on appeal. *See Moya v. Catholic Archdiocese.* We believe that decision was predicated, at least in part, upon the false testimony that

the summons and complaint were found under the couch and not secured to the door handle. Where the alleged fraud was worked upon the appellate court, this Court need not remand the case to the trial court but may exercise its inherent power to grant relief. *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. at 248–50, 64 S.Ct. at 1002–03; *see also Root Ref. Co. v. Universal Oil Prods. Co.*, 169 F.2d 514, 522 (3d Cir.1948), *cert. denied sub nom. Universal Oil Prods. Co. v. William Whitman Co.*, 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949).

■ Whether reinstatement of the 1977 default judgment is the appropriate relief in this case depends upon whether this Court would have decided the first appeal differently had we then known the facts revealed by the April 1986 deposition testimony. Although the "laws of the case" doctrine generally binds an appellate court to rulings on questions of law made in a previous appeal, whether right or wrong, *see United Nuclear Corp. v. General Atomic Corp.*, 98 N.M. 633, 640, 651 P.2d 1277, 1284 (1982), *cert. denied*, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 369 (1983), we will not apply that judicial doctrine here, where doing so might result in a manifestly unjust decision and where the essential facts have been altered by a substantial change in the evidence. *See Dancing Sunshines Lounge v. Industrial Comm'n*, 149 Ariz. 480, 482–83, 720 P.2d 81, 83–84 (1986) (en banc). We therefore shall reconsider whether defendant was denied due process of law by the method of substituted service of process effected upon him.

SCRA 1986, Rule 1–004(F)(1) requires "posting [copies of the summons and complaint] in the most public part of the defendant's premises." Although statutes authorizing substituted service of process are to be strictly construed, *Moya v. Catholic Archdiocese*, 92 N.M. at 279, 587 P.2d at 426, our rule neither defines posting nor proscribes any particular method of posting. Whether a summons was served in a manner reasonably calculated to bring the proceeding to the defendant's attention de-

pends upon the facts and circumstances of each case. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *cf. Household Fin. Corp. v. McDevitt*, 84 N.M. 465, 466–67, 505 P.2d 60, 61–62 (1973) (construing term "usual place of abode" as used in Rule 1–004(F)(1)). To the extent that *Moya v. Catholic Archdiocese* suggests otherwise, it is expressly overruled.

The testimony of the process server at the hearing on defendant's motion to set aside the default judgment and the April 1986 deposition testimony of defendant and his wife indicate that rolled-up copies of the summons and complaint were attached to the handle of the defendant's front porch door by a rubber band. The papers remained secured to the door handle until defendant and his wife, returning home that afternoon, discovered and removed them. Defendant understood what they were, took them inside the house, and read them. We believe that in this case the summons and complaint were served in a manner reasonably calculated to bring the proceeding to defendant's attention. He was not denied due process of law. Only by fraud upon this Court did he procure our mandate setting aside the default judgment of August 8, 1977, and we hold that reinstatement of that default judgment is the appropriate relief in this case.

For the foregoing reasons, the summary judgment of the district court is reversed and the case is remanded to the district court in order for it to reinstate the default judgment entered on August 8, 1977.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and SOSA, Senior Justice, concur.

WALTERS and RANSOM, JJ., dissent.

WALTERS, Justice, dissenting.

I join in Justice Ransom's dissent; and for another reason I cannot agree with the majority opinion. It reaches a result based upon *this* Court's *finding* that we were misled in the prior appeal. There had not yet been a finding by a trial judge when

Jose de la Luz (Joe) Moya lied regarding knowledge of the summons. Was it earlier when the default was set aside, or was it in the instant case now on appeal? Did Joe regret conveying half of his interest to his attorneys, and was that a motive for him to lie in this case rather than in the earlier matter? Those are questions of fact that should be decided upon a trial resulting from the perjury issue, and not by this Court.

I am concerned with the majority's ignoring, in its opinion, the trial court's determination of the respective interests in the property. The trial judge awarded 92.5% of the property to Jose Manuel Montoya, and 7.5% to Strand and Van Amberg, apparently upon an erroneous determination that the disclaimers of other siblings operated as a deed to Jose Manuel and his wife. As a matter of fact, those siblings disclaimed any adverse interest in the land only insofar as Jose Manuel's quiet title claim was concerned. They made no claim for or against any interest to which Joe might have been entitled. A disclaimer is not a conveyance; it is nothing more than a disavowal of any and all right or title to the property in controversy. *Toppins v. Oshel,* 141 W.Va. 152, 89 S.E.2d 359 (1955). Consequently, any other claimant in the lawsuit was as much a beneficiary of that disclaimer as was Jose Manuel.

In 1977, after the default against him had been set aside, the district court awarded Joe a fee simple interest in the land with respect to any adverse interests that those same disclaiming siblings might have had. If that decision was the correct one, Jose Manuel had his mother's 25% interest by deed and Joe, or Joe and Jose Manuel together, had the remaining 75% interest free of their siblings' claims; and because Joe had deeded one-half of his interest to Strand and Van Amberg, who were permitted to intervene in this action to protect the interest they had obtained as an attorneys' fee, I think the proper allocation of interest of the parties that the trial court should have made is:

| Jose Manuel | 25% + 37.5% = 62.5% |
| Strand and Van Amberg | ½ of 37.5% = 18.75% |
| Joe | ½ of 37.5% = 18.75% |

The case should be remanded to the trial court for factual findings regarding fraud, and then the court should also be directed to recalculate the respective interests of any of the parties. Unless there is some finding of participatory deceit on the part of the attorneys, a new judgment protecting the 18.75% interest they claimed against Joe, or damages equal to the value of that 18.75% should be entered in their favor against Joe Montoya.

RANSOM, Justice (dissenting).

The actions of the defendant did not constitute a "fraud upon the court," which is to be distinguished from ordinary fraud or fraud between the parties. The distinction is necessary in light of SCRA 1986, 1–060(B)(3) (commonly known as Rule 60(B)(3)), which contains a one-year limitation in which to reopen a judgment procured by fraud, other than fraud upon the court. *See Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978) (Rule 60(B)(6) may not be used to circumvent the one-year time limit as contemplated in Rule 60(B)(3).).

As noted in *Jemez Properties, Inc. v. Lucero,* 94 N.M. 181, 184 n. 1, 608 P.2d 157, 160 n. 1 (Ct.App.1979), *cert. denied,* 94 N.M. 628, 614 P.2d 545 (1980), fraud upon the court is limited to that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner. Usually, only the most egregious misconduct, such as bribery of judges, employment of counsel to "influence" the court, bribery of the jury, or the involvement of an attorney in the perpetration of the fraud constitutes fraud upon the court. *Id.; see also Great Coastal Express, Inc. v. International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers,* 675 F.2d 1349 (4th Cir.1982), *cert. denied,* 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). Instead of finding fraud upon the court, the *Jemez Properties, Inc.,* court ruled that forging of a deed and tampering with public records in the county clerk's office established an exceptional circumstance which permitted invocation of Rule

60(B)(6), which provides a reservoir of equitable power to do justice in a given case. 94 N.M. at 184, 608 P.2d at 160.

Another criterion for fraud upon the court is that the acts of the adverse party have to be such as prevent the losing party from fully and fairly presenting his case or defense. *See Keys v. Dunbar*, 405 F.2d 955 (9th Cir.), *cert. denied*, 396 U.S. 880, 90 S.Ct. 158, 24 L.Ed.2d 138 (1969). Finally, to have a judgment set aside on the ground of fraud upon the court it is necessary to show that there was an unconscionable plan or scheme which was designed to influence the court in its decision. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

Courts confronting the issue of fraud upon the court consistently have held that perjury or fabricated evidence are not grounds for such fraud. "Perjury and fabricated evidence are evils that can and should be exposed at trial and the legal system encourages and expects litigants to root them out as early as possible. Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process." *Great Coastal Express, Inc.*, 675 F.2d at 1357. Where there is no allegation of an attorney involved in perjury and no evidence to suggest that the normal, impartial operation of the court that heard the original action was interfered with in any way by a party's fraud, perjury by a party of the original action does not constitute fraud upon the court. *See Travelers Indem. Co. v. Gore*, 761 F.2d 1549 (11th Cir.1985). "Perjured testimony and false evidence obviously interfere with the court's role in discovering the truth. That alone does not, however, 'defile the court itself'." *Great Coastal Express, Inc. v. International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers*, 86 F.R.D. 131, 137 (E.D.Va.1980), *aff'd* 675 F.2d 1349 (4th Cir.1982), *cert. denied*, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983); *see also Porcelli v. Joseph Schlitz Brewing Co.*, 78 F.R.D. 499 (E.D.Wis.), *aff'd without opinion*, 588 F.2d 838 (7th Cir.1978).

In the case at bar, the defendant now has testified that, to support his claim of excusable neglect in a motion to set aside a default judgment, he had concocted a story of how the summons became hidden under a couch on his front porch. It was on the strength of that story that he prevailed on appeal. *See Moya v. Catholic Archdiocese*, 92 N.M. 278, 587 P.2d 425 (1978). One or the other of his stories, that he did or did not receive the summons, is a falsehood. However, the perjury involved falls short of fraud upon the court. In *Hazel–Atlas Glass Co.*, the deliberately planned and executed scheme involved attorneys for Hartford–Empire authoring a false magazine article that they used to support their action for patent infringement in both the patent court and in the court of appeals. Moreover, in deciding for Hartford–Empire, the court of appeals quoted copiously from the spurious article. In his dissent in *Great Coastal Express, Inc.*, Judge Butzner expressed in his analysis of *Hazel–Atlas Glass Co.*, with which the majority opinion would not take issue, that proof of two elements is required to establish fraud on the court for the purpose of setting aside a civil judgment when the court itself has not been compromised by bribery or corruption. "The first is that the judgment involves an issue 'of great moment to the public.' A dispute that concerns only private litigants is not enough." *Great Coastal Express, Inc.*, 675 F.2d at 1364 (Butzner, J., dissenting) (citations omitted). The second requirement is that a deliberately planned and carefully executed scheme be perpetrated to defraud the court. *Id.*

There is no question that the defendant at some time lied to this Court. However, we should not broaden the narrow construction given to "fraud upon the court" and hold that the defendant's conduct in this case rises to the level of such fraud. In doing so, we may effectively abrogate the distinction between ordinary fraud and fraud upon the court, *thereby making every perjury case a fraud upon the court.*

I would remand for the trial court to decide under Rule 60(B)(6) whether exceptional circumstances exist in connection with the perjury and, if so, to decide which tale was indeed the fabrication.