789 P.2d 1262

**Terry J. EOFF, Individually and as Personal Representative of the Estate of Leo Eoff, Deceased, Fay Nell Wolfe, and Tom Stanley Eoff, Plaintiffs–Appellants,**

v.

**Robert H. FORREST and James L. Dow, Defendants–Appellees,**

**and**

**Carlsbad National Bank, Defendant.**

**No. 17901.**

Supreme Court of New Mexico.

April 5, 1990.

J.W. Anderson, Tucumcari, for plaintiffs-appellants.

W.T. Martin, Jr., Carlsbad, for defendant-appellee Forrest.

Civerolo, Hansen & Wolf, Roberto C. Armijo, Albuquerque, for defendant-appellee Dow.

Robert C. Gutierrez, Albuquerque, for defendant Carlsbad Nat. Bank.

## OPINION

MONTGOMERY, Justice.

Section 45–1–106 of the Probate Code of this state (taken largely from the Uniform Probate Code) provides in part:

> If fraud has been perpetrated in connection with any proceeding or in any statement filed under the Probate Code or if fraud is used to avoid or circumvent the provisions or purposes of the code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud including restitution from any person * * * benefiting from the fraud, whether innocent or not.

NMSA 1978, § 45–1–106(A) (Repl. Pamp. 1989).

Seeking to invoke this section and relying on other asserted bases of liability, Leo Eoff's nephews and niece (the heirs) sued Robert H. Forrest and James L. Dow (the defendants), along with the Carlsbad National Bank (the bank), for actual and punitive damages claimed to have resulted from an informal probate of the decedent's purported will. The trial court granted summary judgment to the defendants on the heirs' claim of fraud, certifying the judgment as final under SCRA 1986, 1–054(C)(1). The heirs appeal, and we reverse. Although the heirs may have a difficult time at trial in meeting the exacting requirements for a claim of fraud, the defendants failed to make a *prima facie* showing that there is no genuine issue as to the facts underlying the heirs' claim.

### I.

Leo Eoff (the decedent) died on August 16, 1985, at Carlsbad, New Mexico. After

his death, the Carlsbad police department found a safe deposit box key at his home and arranged to have the box, which was at the bank, opened. Inside the box was a document apparently signed by the decedent and reading as follows:

> After my death and all incidental expenses are paid; my entire estate (if any) including all relestate [sic], saving certificates, cashon [sic] hand, tools, building equipment, vehicles ect [sic]; I bequeath to The Home For Handicapped Children, of Carlsbad.

> As of this date being of sound mind and body, I make this bequest after due consideration and of my own free will.

The document (the purported will) was dated March 18, 1977 in Carlsbad, New Mexico, and was signed, apparently by the decedent. Two signature lines for witnesses appeared below the signature, but they contained no signatures.

The only home for handicapped children in Carlsbad is operated by the Carlsbad Association for Retarded Children, apparently on a farm (the CARC Farm). The president of the CARC Farm, Forrest, took the purported will to an attorney, Dow, to ascertain whether the CARC Farm had any interest in the decedent's estate. Dow did some research and told Forrest that the purported will, if executed in New Mexico, was invalid, but if executed in another state that recognized "holographic" wills, it might be valid under NMSA 1978, Section 45-2-506 (Repl. Pamp. 1989). Forrest told Dow that the police department and the funeral home had been unable to locate any heirs of the decedent; he also learned from Dow that, if the will was invalid and there were no heirs, the estate eventually would escheat to the state. Dow advised that it was a question of interpretation whether the CARC Farm was the devisee referred to in the purported will, but that, if so, the CARC Farm was an "interested party" under NMSA 1978, Section 45-1-201(A)(19) (Repl.Pamp. 1989), and, as president of the Farm, Forrest could apply for letters testamentary and offer the will for probate.

Dow further advised Forrest that the only way he could handle the matter would be to make full disclosure to the Probate Court of the facts and of the possibility that, if an heir eventually were located, he or she could set aside any probate of the purported will within three years after the decedent's death. Forrest requested Dow to proceed in that fashion.

Dow filed an application for informal probate with the Probate Court of Eddy County, accompanied by a memorandum brief setting out the facts and legal positions of Forrest as applicant and Dow as his attorney. The application recited that Forrest was an interested person and president of the CARC Farm; that the CARC Farm was the only devisee known or ascertainable with reasonable diligence; that the applicant believed the instrument which was the subject of the application was the decedent's last will and testament; and that

> Applicant does not know where the will, which is tendered herewith, was executed, but states that if the will was executed in a state requiring the will be signed by the testator, then possibly the will tendered herewith is a valid will.

The memorandum brief signed by Dow set out the basic facts as to discovery of the purported will and apparent absence of heirs and continued:

> The applicant and attorneys for applicant have no knowledge of where this Will was executed. If it was executed in the State of New Mexico, it is not sufficient under the New Mexico Uniform Probate Code ... to constitute a valid Will. If the Will was executed in a State that requires Wills drawn by decedent be signed by him without witness, then the Will could be a valid Will.

> . . . .

> Applicant ... does not know where the Will was executed but if the Will was executed in a State recognizing the validity of Wills signed by the decedent but not witnessed, then this would be a valid Will.

The memorandum brief further stated, apparently relying on NMSA 1978, Section

45-3-303(C) (Repl.Pamp. 1989), that "this Court may presume this to be a valid Will." The memorandum brief finally advised the court that, if there were any undiscovered heirs of the decedent, they would be protected by provisions in the Probate Code allowing informal probate of a will to be set aside in a formal testacy proceeding commenced within three years after the decedent's death. *See* NMSA 1978, § 45-3-108(A)(3) (Repl.Pamp. 1989). The applicant assured the court that he would make a diligent search to find any heir and that, if any was found, he or she could contest the probate of the purported will within the time allowed by the statute.

The probate court granted the application and appointed Forrest as personal representative in an unsupervised, informal proceeding in September 1985. Dow thereafter did undertake various efforts, into the summer of 1986, to locate any heirs, but none was found. However, in the summer of 1987 the decedent's nephew, Terry Eoff, discovered that Forrest had been appointed as personal representative of his uncle's estate and initiated a formal testacy proceeding. The district court revoked probate of the purported will and adjudicated the appellants as the decedent's heirs. All of the assets of the estate were turned over to Terry Eoff as the new personal representative of the decedent's estate, except for approximately $21,000 that had been expended in the administration of the estate and various items of personalty that Eoff claimed were missing.

The heirs then brought suit against Forrest, Dow and the bank, seeking, in addition to actual and punitive damages for alleged fraud, damages from Forrest for conversion, recovery from Dow of an allegedly excessive fee, and damages from the bank for unauthorized removal of the purported will from the safe deposit box. All three defendants moved for summary judgment, and the district court granted the motions as to Count I (fraud), granted Forrest's motion in part as to Count II (conversion), and denied Dow's motion as to Count III (recovery of excessive fee). The record does not reflect the court's disposition, if any, of the bank's motion. The heirs appeal, asserting as the sole issue that the trial court erred in granting summary judgment as to the fraud count in their complaint.

## II.

There is thus no issue on this appeal as to the propriety of the defendants' actions in seeking informal probate of the purported will, apart from the question whether the defendants committed fraud as contemplated by Section 45-1-106(A). More specifically, the heirs did not assert in their complaint and do not assert on appeal that their alleged damages resulted from any wrongful conduct, either actual or constructive, by the defendants in initiating the informal probate proceeding, whether by way of possible breach of fiduciary duty, breach of a standard of care on the part of the attorney for the estate, or other conceivable theories that might lead to relief. The *only* issue presented to the trial court and to this Court on appeal is whether defendants committed fraud in their representations to the probate court.

We are thus called upon to apply Section 45-1-106(A) to the facts as developed in the affidavits submitted to the district court. The heirs do not assert on appeal that the term "fraud" as used in the statute has any meaning different from that involved when the fraud claimed is ordinary, common-law fraud. There is no claim, for example, that the kind of fraud contemplated by the Probate Code is less rigorous, in its requirements of pleading and proof, than common-law fraud, as is true, for instance, in the case of securities fraud. *See, e.g., Treider v. Doherty & Co.*, 86 N.M. 735, 527 P.2d 498 (Ct.App.), *cert. denied*, 86 N.M. 730, 527 P.2d 493 (1974). In *Treider*, the court of appeals noted that common-law fraud "must be proven by clear and convincing evidence because it is an easily made charge that stains the person accused with a mark of dishonesty. In common law

fraud the plaintiff must prove that the defendant intentionally deceived him." *Id.* at 737, 527 P.2d at 500 (citations omitted). The court went on to distinguish such common-law fraud from the special statutory fraud involved there, saying: "The intent with which the defendant makes the statement is irrelevant under the terms of the statute. The statute requires only that the statement made be false and material, or that the omission be of a material fact necessary to make true the statement made." *Id.*

We believe that the "fraud" contemplated by Section 45–1–106(A) is ordinary, common-law fraud as distinct from some other, less demanding species of fraud, such as the securities fraud involved in *Treider. See Witt v. Jones,* 111 Idaho 165, 168, 722 P.2d 474, 477 (1986) (action for fraud against personal representative of estate requires particularly-pled elements of common-law fraud); *cf. In re Estate of Latshaw,* 194 Kan. 747, 402 P.2d 323 (1965). The "Probate Code" fraud involved here comes closer to "fraud on the court," which, if anything, is even more exacting than common-law fraud. *See Moya v. Catholic Archdiocese of New Mexico,* 107 N.M. 245, 247, 755 P.2d 583, 585 (1988):

> Fraud upon the court embraces only that species of fraud which does or attempts to defile the court itself or which is perpetrated by officers of the court so that the judicial system cannot perform in a usual manner. *Jemez Properties, Inc. v. Lucero,* 94 N.M. [181] 184 n. 1, 608 P.2d [157] at 160 n. 1 [ (1979) ]. Fraud upon the court occurs where there is a deliberately planned and carefully executed scheme to defraud the court * * *.[1]

We hold that the well-established requirements under New Mexico law for an action based on fraud apply to a claim of fraud asserted under Section 45–1–106(A): (a) a misrepresentation of fact, (b) known by the maker to be false, (c) made with the intent to deceive and to induce the other party to act in reliance, and (d) actually relied on by the other party to his or her detriment. *Cargill v. Sherrod,* 96 N.M. 431, 432–433, 631 P.2d 726, 727–28 (1981); *Unser v. Unser,* 86 N.M. 648, 653–654, 526 P.2d 790, 795–796 (1974); *Prudential Ins. Co. of Am. v. Anaya,* 78 N.M. 101, 104, 428 P.2d 640, 643 (1967); *Sauter v. St. Michael's College,* 70 N.M. 380, 374 P.2d 134 (1962). "There must be a concurrence of all of these essential elements and without this there can be no actionable fraud. None * * * can be presumed, but each must be shown by clear and convincing evidence." *Sauter,* 70 N.M. at 385, 374 P.2d at 138.

### III.

Thus, the heirs will face a formidable task in attempting to establish at trial the elements of the cause of action they have pled. Even so, it is not the function of the trial court on a motion for summary judgment, and it is not our function here, to decide whether those elements have been established, if one or more factual issues appear from the materials submitted to the court in connection with the motion. The first step in considering such a motion is to decide whether or not the moving parties have established a *prima facie* case that there is no genuine issue of fact as to one or more of these required elements; only in that case would the movants be entitled to judgment as a matter of law under SCRA 1986, 1–056. *Koenig v. Perez,* 104 N.M. 664, 666, 726 P.2d 341, 343 (1986); *Goodman v. Brock,* 83 N.M. 789, 792, 498 P.2d 676, 679 (1972).

The materials available for consideration by the court on the defendants'

---

1. As *Moya* recognizes, the involvement of an attorney in the perpetration of fraud can amount to fraud on the court. "[W]hile an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court." 7 *Moore's Federal Practice* ¶ 60.33, at 359 (2d ed.1987).

motion consisted of the following: the purported will, the defendants' application for informal probate, Dow's memorandum brief in connection with the application, and various affidavits, including an affidavit by the probate judge who granted the informal probate. The probate judge's affidavit stated that she relied on the lawyers in the community and signed whatever documents they presented to her. Her affidavit was sufficient, at least for purposes of the motion, to establish the fourth element of the heirs' cause of action: reliance by the "other party" to his or her detriment.[2]

As to the other elements of the heirs' claim for fraud, we think that the materials submitted to the district court, while not establishing any of those elements, were sufficient to give rise to several issues of fact. Neither Forrest's nor Dow's affidavit directly addressed the questions whether the defendants had made a misrepresentation of fact, whether (if so) they knew their statements to be false, or whether the statements were made with the intent to deceive the probate judge. Forrest simply averred that he had turned over the assets in the estate to Terry Eoff upon the latter's appointment as successor personal representative; it did not relate to the circumstances surrounding the application for informal probate.

Dow's affidavit, on the other hand, did address those circumstances but, when considered in connection with the purported will and the materials filed with the probate court, left certain questions unanswered—questions which it was necessary for him to eliminate in order to carry his initial burden on summary judgment. First, although Dow swore that "[a]t the time of filing the probate, I filed the Memroandum [sic] Brief with the Court fully disclosing all the facts as we knew them at that time and thereby disclosed to the Court * * * the legal procedure that we intended to take," the affidavit at no point affirmed the truth of the statements that had been made to the probate court or denied that, if any statement was not true, it was known by the applicants to be false. Dow's affidavit related at considerable length the circumstances under which the application had been filed and the lengths to which he had gone to determine whether the decedent had left any heirs. From this affidavit one can assume that Forrest and Dow faced a quandary: The decedent had died leaving an instrument that appeared to be a will devising his entire estate to the CARC Farm;[3] there were no heirs as far as anyone knew; if no heir existed or could be found, the estate presumably would go unadministered and ownership eventually would pass to the state.

But the recitations in Dow's affidavit, while perhaps warranting an inference that he and Forrest were acting in complete good faith in proceeding as they did, did not suffice to dispel the conflicting inferences that arose from the purported will itself and the documents submitted to the probate court to secure its informal probate. Immediately above the date on the purported will was an address on West Church Street in Carlsbad—yet the defendants represented that they did not know where the purported will was executed and implied that it might have been executed in a state other than New Mexico. They further stated that, if the purported will were executed in a state recognizing the validity of wills signed by the decedent but not witnessed, the purported will would be valid—but every state appears to invalidate a

**2.** In the context of fraud under Section 45-1-106(A), as in other instances of "fraud on the court," we construe the "other party" whose reliance is essential for a valid cause of action to be the court to which the representation is made. See Moya, 107 N.M. at 247-48, 755 P.2d at 585-86 (Supreme Court defrauded in relying on false testimony to reverse district court judgment); Lockwood v. Bowles, 46 F.R.D. 625, 632 (D.D.C. 1969) (fraud between parties not treated as fraud on court without attempt to defile or improperly influence court itself).

**3.** The defendants submitted an affidavit of one of the decedent's friends, who stated that the decedent had told him that he had made a will and had given his entire remaining property to the CARC Farm "or the farm north of Carlsbad, New Mexico."

typewritten (i.e., not a holographic or hand-written) will the execution of which has not been witnessed by attesting witnesses.[4] Dow's Memorandum Brief, relying on NMSA 1978, Section 45–3–303(C), stated that the probate court "may presume this to be a valid Will"—but Section 45–3–303(C) permits such a presumption only when the will appears to have been properly executed or when a person having knowledge of the circumstances of execution gives a sworn statement showing that it was properly executed. The requirements for "due execution" in Sections 45–2–502 and 45–2–506 contemplate that the will must be executed in the presence of at least two attesting witnesses or must comply with the law of the place where the will is executed. In this case the purported will did not appear to have been properly executed, and Forrest (as the affiant in the application for informal probate) did not have knowledge of the circumstances of its execution.

We certainly do not hold that the raising of these questions would satisfy the heirs' burden at trial to prove fraud by clear and convincing evidence. The sufficiency of the heirs' proof at trial must be decided, first, by the trial judge (in ruling, for example, on a motion for a directed verdict) and, second, by the jury if the issue of fraud is submitted to it. We hold only that the questions raised by the papers filed with the probate court constituted issues of fact and that the affidavits in support of the motion for summary judgment did not negate them. The movants, in other words, did not make a *prima facie* showing that there was no genuine issue of fact as to one or more of the requisite elements in the heirs' claim for fraud. That being the case, there was no occasion for the district court to consider, and we do not consider, whether anything submitted on behalf of the heirs rebutted a *prima facie* showing which the movants did not make.

The purpose of Section 45–3–303

is to permit informal probate of a will which, from a simple attestation clause,

appears to have been executed properly * * *. If the instrument does not contain a proper recital by attesting witnesses, it may be probated informally on the strength of an affidavit by a person who can say what occurred at the time of execution.

Unif. Probate Code § 3–303 comment, 8 U.L.A. 250 (1983). The official comments to the Uniform Probate Code also indicate that the requirement of an oath

concerning the details required of applications should deter persons who might otherwise misuse the no-notice feature of informal proceedings * * *. If *deliberately false* representation is made, remedies for fraud will be available to injured persons * * *.

*Id.*, § 3–301, 8 U.L.A. at 247 (emphasis added).

The record in this case does not establish that the defendants made "deliberately false representations" or that they intended to abuse the informal probate process. However, that process was not designed to determine the validity of a testamentary instrument lacking the facial indicia of validity contemplated by Sections 45–3–301 and 45–3–303. That task is reserved to the district court under Sections 45–1–302 and 45–3–401. In this case there was also a question as to the identity of the devisee under the purported will; whether the "Home For Handicapped Children, in Carlsbad" meant the CARC Farm was a question of interpretation that only the district court could properly resolve. *See Moore v. Bean*, 82 N.M. 189, 477 P.2d 823 (1970) (considering extrinsic evidence and interpreting testator's intent, court found charitable beneficiary to be intended devisee despite mistake in will regarding charity's name and location). While we see no basis for the heirs' assertion that the defendants falsely represented that the CARC Farm was the devisee under the purported will, we disapprove submitting this kind of issue to the probate court. The system of probate in New Mexico depends on attorneys

---

**4.** *See Shepard's Lawyer's Reference Manual* § A–33 (M. Bennett ed. 1983).

and requires them to exercise their best professional judgment in selecting informal probate, in which the attorney is the main safeguard against all manner of abuse, or formal probate, which·is designed to resolve questions regarding the validity and interpretation of a testamentary instrument.

We conclude that the district court erred in finding that there was no genuine issue as to one or more of the material facts necessary to give rise to a claim for fraud against the defendants under Section 45–1–106(A). The summary judgment in defendants' favor is reversed, and the cause is remanded for further proceedings consistent with this opinion.

SOSA, C.J., and WILSON, J., concur.

RANSOM and BACA, JJ., specially concur.

RANSOM, Justice (specially concurring).

While I concur in the result reached in this opinion, I do so on rationale that conflicts with that of the author. Referring to the substantive evidentiary burden of clear and convincing evidence, the opinion holds that the "sufficiency of the heirs' proof" can be tested only at trial on a motion for directed verdict or by the jury. We recently addressed sufficiency of proof by clear and convincing evidence in the context of a directed verdict.

> The possibility of recovery may appear remote to the trial judge in the normal case involving a "preponderance of the evidence" standard. It may appear even more remote when proof is required by "clear and convincing evidence." However, if the plaintiff has introduced a minimum quantum of evidence from which the jury could reasonably find in his favor under the applicable standard of proof, then the plaintiff is entitled to a jury determination.
> When the standard is clear and convincing evidence, the question for the trial judge is whether there is sufficient evidence introduced from which a reasonable juror could reach an "abiding conviction" as to the truth of the plaintiff's claim. *See Duke City Lumber Co. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975); *In re Foster,* 102 N.M. 707, 699 P.2d 638 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985); *see also In re Fletcher,* 94 N.M. 572, 613 P.2d 714 (Ct.App.), *cert. denied,* 94 N.M. 674, 615 P.2d 991 (1980).
> In the instant case, we believe that the evidence presented by [plaintiff] met this threshold standard and, therefore, entry of a directed verdict against him was error. The evidence is entirely circumstantial, but we have long recognized that clear and convincing evidence may be circumstantial in nature. *See Ledbetter v. Webb,* 103 N.M. 597, 711 P.2d 874 (1985); *Sauter v. St. Michael's College,* 70 N.M. 380, 374 P.2d 134 (1962).

*Chavez v. Manville Products Corp.,* 108 N.M. 643, 648, 777 P.2d 371, 376 (1989).

I would explicitly extend the holding of *Chavez* to summary judgment proceedings. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held:

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.

*Id.* at 252, 106 S.Ct. at 2512.

> In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages. Consequently, where the * * * "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.

*Id.* at 255, 106 S.Ct. at 2514.

The opinion rendered today does not apply the *Chavez* holding to summary judg-

ment proceedings. It specifically states: "We certainly do not hold that the raising of these questions [i.e., factual inferences] would satisfy the heirs' burden at trial to prove fraud by clear and convincing evidence." Also: "The record in this case does not establish that the defendants made 'deliberately false representations' or that they intended to abuse the informal probate process."

To the contrary, while the possibility of recovery may appear remote and, as expressed in the opinion, "the heirs may have a difficult time at trial meeting the exacting requirements for a claim of fraud," I believe the plaintiff has responded to the motion for summary judgment with a minimum quantum of evidence from which the jury could reasonably find in his favor under the applicable standard of proof.

Therefore, applying the substantive evidentiary standard of proof to this proceeding, I would reverse the summary judgment and remand for trial.

BACA, J., concurs.