**Wei–Ni CHEN and Jimmy Po–Chen Lee, Individually, and as Next Friend for Helen Ay–Luen Lee, a Minor, Plaintiffs–Appellants,**

v.

**METROPOLITAN INSURANCE AND ANNUITY COMPANY, Defendant–Appellee.**

**No. 89–2805.**

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1990.

J. Martin Clauder, Charles K. Stephenson, Stephenson, Anderson & Assocs., Inc., Houston, Tex., for plaintiffs-appellants.

Alvin Pasternak, William J. Toppeta, New York City, for defendant-appellee.

Before BROWN, JOLLY and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

*Facts and Procedure Below*

On September 18, 1986, while celebrating a Chinese festival, Ching Sing Lee (Lee) died as a result of drinking too much brandy. A life insurance policy (Policy) issued to Lee by Metropolitan Insurance and Annuity Company (Metropolitan) provided for the payment of $100,000.00 to Lee's wife and children (the Beneficiaries) in the event of his death. Metropolitan has paid this amount. The Policy also included an accidental death rider in the amount of $100,-000.00, to be paid if "the insured died, directly and independently of all other causes, as the result of an accident." However, the accidental death benefit would not be allowed "if the death: 5. Is caused or contributed to, directly or indirectly, by the use of any drug, unless on the advice of a licensed medical practitioner." Neither "accident" nor "drug" were defined in the Policy. Metropolitan denied the claim for accidental death benefits on the ground that Lee's death was not an accident under the insurance contract.[1]

Thereafter, the Beneficiaries sued Metropolitan, seeking the accidental death benefits, penalties and attorney's fees. Following discovery by the Beneficiaries, Metropolitan filed a motion for summary judgment arguing that there were no genuine issues of material fact as to whether Lee's death was indeed an "accident." The Beneficiaries did not timely oppose Metropolitan's motion for summary judgment, and the trial court granted it.

The Beneficiaries moved for reconsideration of the district court's decision and submitted a late response to Metropolitan's motion for summary judgment. Citing

"the interest of justice," the court below granted the motion to reconsider and reviewed the entire record but adhered to its original decision in favor of Metropolitan. The trial judge gave two reasons for his decision. First, stating that "the Texas Supreme Court has taken judicial notice that the consequences of alcohol consumption are 'common knowledge,'" the trial judge—agreeing with Metropolitan's argument—ruled that Lee's death was not accidental. Second, the court below took judicial notice that "alcohol is a drug," and since deaths caused by drugs are not covered by the accidental death rider, the court in effect held that there could be no recovery for use of that drug, whether accidental or otherwise. This second, independent ground for granting the summary judgment was not raised in Metropolitan's summary judgment motion.

*(i) Was Lee's Death an "Accident"?*

When the Beneficiaries received Metropolitan's motion for summary judgment, they bore the onus of establishing that some fact issue existed showing that the insured's death was accidental. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Beneficiaries were entitled to the trial court's indulging in their favor all reasonable inferences proceeding from the facts before it. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 552, citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962). If a fair minded jury, on the facts presented in the motion, could have returned a verdict for the Beneficiaries, then the judge is required to deny the motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. The motion for summary judgment involves two competing interests: the Beneficiaries, asserting that their claim is adequately based

---

1. This was the sole ground for Metropolitan denying accidental death benefits to the Beneficiaries. An independent reason for denying these benefits, on the basis that alcohol is a "drug" under the Policy, was not pursued by Metropolitan at this time.

in fact; and the insurer's defense that the beneficiaries' claim has no basis in fact. The trial court's obligation is to give due regard to both interests, *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986), and the trial judge is not to determine whether in his opinion the contradictory evidence favors one side or the other. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

### Texas: The Source and End of It All

Texas law is determinative of this Texas diversity case. *See Sekel v. Aetna Life Ins. Co.,* 704 F.2d 1335, 1337 (5th Cir.1983). The leading Texas case on the construction of accidental death provisions in insurance policies is *Republic Nat. Life Ins. Co. v. Heyward,* 536 S.W.2d 549 (Tex.1976). Bennie Heyward was covered under an accidental death rider. An assailant intentionally shot and killed him. The insurance company denied the claim for accidental death benefits on the ground that the death was caused by the intentional act of the assailant. The Supreme Court of Texas rejected the insurer's position, holding that the focus should be on the reasonable anticipation of the insured, viewed from his/her standpoint: "[the death is accidental] if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or consequence which produced the injury; or, in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury." 536 S.W.2d at 557. Because Mr. Heyward from his conduct could not reasonably anticipate that he would be the victim of a shooting, the Supreme Court of Texas affirmed the judgment in favor of the beneficiary. *See also Crumpton v. Confederation Life Ins. Co.,* 672 F.2d 1248, 1254 (5th Cir.1982).

The insurer argues that it is common knowledge that large doses of alcohol may cause death. In *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984), which concerned quite a different problem—the duty to warn—the father of a minor child sued an alcohol retailer, wholesaler and manufacturer for failing to warn consumers of the dangers of alcohol consumption. The child died from drinking too much alcohol. The Supreme Court of Tennessee held there was no duty to warn because the dangers of alcohol consumption are generally known and recognized:

> The law requires manufacturers to warn of the hidden and unknown dangers in their product; however, as to some risks, manufacturers are entitled to rely upon the common sense and good judgment of consumers. Clearly, death or serious injuries resulting from either excessive or prolonged consumption of alcohol are within the latter type of risks.

664 S.W.2d at 693.[2]

However, the issue is not whether it is common knowledge that one who ingests too much alcohol *may* die. After all, it is common knowledge that one who goes rockclimbing, or bear hunting, or hanggliding, *may* die. There is something inherently dangerous about each of these activities. But it is clear that death caused by any of these activities would be accidental for purposes of insurance coverage under the Texas standard if the person engaging in such activity should have reasonably believed his death would not be the result of such activity. While the standard is not a purely subjective one, *Sanders v. Prudential Ins. Co. of America,* 697 S.W.2d 80, 81–82 (Tex.App.1985), we must nevertheless consider the circumstances "from the insured's viewpoint." *Heyward* 536 S.W.2d at 557.

■■■■ In our case, Lee was drinking American alcohol in a Chinese fashion (drinking ice tea glasses of brandy in two

---

**2.** *See also Garrison v. Heublein, Inc.,* 673 F.2d 189, 192 (7th Cir.1982) ("the dangers of the use of alcohol are common knowledge"); *Maguire v. Pabst Brewing Co.,* 387 N.W.2d 565, 570 (Iowa 1986) ("[w]e are not persuaded, however, that it is practical to expect a wholesale purveyor of alcoholic beverages to devise an adequate warning of the particular tolerance of each consumer"); *Sworski v. Coleman,* 208 Minn. 43, 47, 293 N.W. 297, 299 (1940) ("it is common knowledge that large doses [of alcohol] may cause death").

or three swallows).[3] He had not been drinking for a while and was celebrating a Chinese festival with a drinking partner who consumed a similar quantity of alcohol and survived. It was improper for the trial court to rule as a matter of law that Lee should have reasonably foreseen that death was "the natural and probable consequence" of his ingesting the amount of brandy that he did. *Heyward* 536 S.W.2d at 557. Accordingly, we reverse and remand for further proceedings to the trial court.

### (ii) Is "Alcohol" a Drug Under the Policy?

Words and clauses of insurance contracts are strictly construed against the insurer, *Continental Casualty Co. v. Warren*, 254 S.W.2d 762, 763 (Tex.1953), and if a word or clause is capable of more than one reasonable meaning, then the meaning favoring the insured must be adopted. *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). If the term may be interpreted as a limiting term or the clause itself is an exclusionary clause, then the construction of the clause urged by the insured must be adopted as long as that construction is not unreasonable. *Id.* Even if the insurer's construction is more reasonable than the insured's, the insured's must prevail. *Id.*

Not surprisingly, Metropolitan cites dictionaries and scientific journals that categorize alcohol as a drug.[4] The Beneficiaries parry with their own dictionary definitions that suggest a distinction between "alcohol" and "drug."[5] Of course, since the Policy failed to define "drug," the parties are free to employ dictionaries to analyze the common usage of the term. *See Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir.1976). Indeed, when the trial court considered whether "drug" could reasonably be defined to be different from "alcohol," it was required to consider the common application of the word and not its technical meaning. *Id.*

■ Since "drug" is undefined by the Policy, we must give the term a reasonable construction that favors the insured, if one exists. We construe the term "drug" in the Policy such that alcohol is not included as a member of the class of things to which the term applies. While other reasonable constructions of the term are possible, our construction is not unreasonable, and since it favors the insured, it must be adopted. *Glover*, at 761. Support for such a construction is provided by the clause "unless on the advice of a licensed medical practitioner," which follows the term "drug" in the Policy. Accordingly, we reverse the district court on this issue and instruct the court on remand to construe the term "drug" in the Policy as not including alcohol.

■ Finally, Metropolitan has claimed that the Beneficiaries waived their right to contest the district court's decision to take judicial notice that alcohol is a drug. Generally speaking, when a party wants to challenge the propriety of taking judicial notice, it must file a motion requesting an opportunity to be heard. *See MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir.1985); Fed.R.Evid. 201(e). The Beneficiaries, however, did not seek review

3. It is unclear from the record exactly how much alcohol Lee personally had consumed, since he was sharing bottles of liquor with other people. However, since the toxicology report shows a blood alcohol content of .594% at the time of Lee's death, we know that he had more than an insignificant amount to drink.

4. Metropolitan provides numerous examples. *See, e.g.,* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 476 (25th ed. 1974) ("habit-forming d., any drug, such as alcohol, tobacco, morphine, cocaine, opium, that produces dependence, whether physical or psychic"); *Fifth Special Report to the U.S. Congress On Alcohol and Health from the Secretary of Health and Human Services* at xiii (1983) ("[a]lcohol is undoubtedly the most widely used—and abused— drug in America").

5. For example, Beneficiaries cite *Guest v. Horace Mann Ins. Co.*, 168 Ga.App. 714, 310 S.E.2d 241 (1983), in which the court looked to Webster's Third New International Dictionary for the definition of "drug," "a substance used as a medicine or in making medications for internal or external use ... a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animal ...".

in the district court after they learned that the district court had taken judicial notice.

However, it is irrelevant whether the Beneficiaries properly preserved for appeal the issue regarding the legitimacy of the lower court's taking judicial notice that alcohol is a drug. On appeal, we are not faced with the question whether the district court had adequate judicial knowledge that alcohol is a drug under the Policy. Instead, we are presented with a responsibility to construe an undefined term in an insurance contract, and are at liberty to do so as part of our power to determine matters of law.

The summary judgment is reversed and remanded to the district court for further consistent action.

REVERSED AND REMANDED.