2000-NMCA-036

999 P.2d 1062

**Gia May BARTLETT, Petitioner–Appellant,**

v.

**Maria R. MIRABAL, Respondent–Appellee.**

No. 19,929.

Court of Appeals of New Mexico.

March 3, 2000.

Certiorari Granted, No. 26,253,
April 20, 2000.

Howard L. Anderson, Albuquerque, for Appellant.

Thomas L. Popejoy, Popejoy Law Offices, P.C., Albuquerque, for Appellee.

## OPINION

APODACA, Judge.

{1} This interlocutory appeal arises from a will contest. Petitioner Gia May Bartlett filed the will of Silvestre Mirabal (Decedent) for formal probate. Decedent's sister, Respondent Maria R. Mirabal (Contestant), challenged the will on various grounds. Petitioner moved for summary judgment. At the hearing on the motion, Contestant abandoned all grounds for contesting the will except her claim of undue influence. The trial court denied the motion. On appeal, Petitioner argues that the evidentiary standard of proof by clear and convincing evidence should have been applied by the trial court in determining whether genuine issues of material fact existed on the issue of undue influence. The basis for Petitioner's argument is that, because Contestant was ultimately required to prove undue influence by clear and convincing evidence at trial, the determination of whether there were disputed material facts in the summary judgment proceeding should have been governed by the same substantive evidentiary standards that applied to the case on the merits. We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} In response to Petitioner's motion for summary judgment, Contestant presented evidence intended to show that Petitioner had a confidential relationship with Decedent and that suspicious circumstances surrounded the execution of his last two wills. Both of these wills gave his entire estate to Petitioner. According to Contestant, the suspicious circumstances included (1) the unnatural and unjust distribution of the estate, (2) lack of consideration for the transfer or undue profit by Petitioner, (3) Petitioner's participation in the procurement of the will, (4) Decedent's age and frail health, (5) Decedent's susceptibility to undue influence, (6) Petitioner's isolation of Decedent from his family, and (7) abuse of a confidential relationship.

{3} In granting the interlocutory appeal and denying summary judgment, the trial court's order specifically provided:

> If the burden of proof at summary judgment proceedings were in fact "clear and convincing evidence", as held by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and further suggested by Justice Ransom in *Eoff v. Forrest*, 109 N.M. 695, 789 P.2d 1262 (1990), the Court would have granted [Petitioner's] Motion for Summary Judgment and dismissed the case.

Implicit in the order's language is that, for purposes of deciding the existence of genuine issues of material fact at the summary judgment stage, the trial court used the preponderance-of-the-evidence standard, even though the burden of proof on the issue of undue influence at trial would have been under a clear-and-convincing standard.

## II. DISCUSSION

### A. Standard of Review

{4} An appeal from the grant or denial of a motion for summary judgment presents a question of law. We therefore review de novo the trial court's denial of summary judgment. *See Harrell v. Hayes*, 1998–NMCA–122, ¶ 11, 125 N.M. 814, 965 P.2d 933.

### B. The Evidentiary Standard in Summary Judgment Proceedings

#### 1. Petitioner's Contentions Generally

{5} Petitioner essentially argues that New Mexico has already adopted the United States Supreme Court's rationale in *Anderson*. *Anderson*, of course, applied only

to the federal standard for summary judgment. *See* Fed.R.Civ.P. 56. It is exclusively the province of the state judiciary in New Mexico to decide the standard for our state rules on summary judgment. *See* Rule 1–056 NMRA 2000. It is the state's prerogative to follow or not to follow *Anderson*. If Petitioner is correct that New Mexico has already adopted *Anderson* for our state rule, then the trial court should have applied the standard of clear and convincing evidence, the burden of proof at trial, in considering her motion for summary judgment. *See Anderson*, 477 U.S. at 254, 106 S.Ct. 2505 ("When determining if a genuine factual issue ... exists ... a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability....").

{6} As additional support for her argument, Petitioner analogizes a motion for summary judgment to a motion for a directed verdict, insisting that the same evidentiary considerations apply to both. *See id.* ("Just as the 'convincing clarity' requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment."); *see also Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 727, 749 P.2d 1105, 1106 (1988) (considering cases on summary judgment and directed verdict in evaluating propriety of reconsideration of denial of motion for a directed verdict).

{7} Our Supreme Court, however, has clearly distinguished between summary judgment proceedings and motions for directed verdict. *See Eoff*, 109 N.M. at 701, 789 P.2d at 1268 (discussing the differences between summary judgment and directed verdict). The Court applied the traditional approach to summary judgment proceedings in which the nonmoving party need only show a genuine issue of material fact and need not present evidence sufficient to meet the burden at trial. *Id.* The Court determined that, when considering a summary judgment motion, it is not the trial court's task to determine if all the elements will be met, only that "one or more factual issues" are in dispute. *Id.*

{8} Petitioner's contentions require us to examine summary judgment proceedings in New Mexico. The sole question posed is whether *Anderson* has already been adopted in this state. Our examination of New Mexico cases involving summary judgment proceedings leads us to answer this question in the negative.

{9} In his special concurrence, Judge Alarid relies on six New Mexico cases he maintains support his contention that our courts have made "a significant move towards adoption" of the *Anderson* standard in summary judgment proceedings. The first two cases, *Blauwkamp v. University of New Mexico Hosp.*, 114 N.M. 228, 836 P.2d 1249 (Ct.App.1992), and *Furgason v. Clausen*, 109 N.M. 331, 785 P.2d 242 (Ct.App.1989), are inapposite.

{10} *Blauwkamp* involved a medical malpractice case in which plaintiff would not be able to "establish an essential element of [plaintiff's] claim" without an expert witness. *Blauwkamp*, 114 N.M. at 232, 836 P.2d at 1253 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In such a situation, the issue was cut and dry because, without an expert, plaintiff had no case, and thus, "*on these facts Celotex* and existing New Mexico cases produce[d] the same result." *Id.* Additionally, *Blauwkamp* determined that the mere offering of a qualified expert was sufficient to overcome a motion for summary judgment. The weight to apply to the testimony (the qualification of the expert) was "not properly resolved by summary judgment." *Id.* at 235, 836 P.2d at 1256.

{11} *Furgason* dealt with a unique issue involving the alleged defamation of a public figure. In that case, in considering a motion for summary judgment, the trial court needed to know what issues of fact were disputed. One of these issues was whether the plaintiff was a public figure. If he was, then the issue of negligence in the case was irrelevant. If he was not a public figure, then negligence would be a genuine issue of material fact. Under these circumstances, the trial court was required to determine the substantive evidentiary standard (that is, the standard that applied to directed verdicts but not summary judgment proceedings) before deciding whether to grant summary judgment be-

cause the disputed issue of fact depended on whether negligence was relevant.

{12} We should also note that *Furgason* relied on an old New Mexico Supreme Court case, *Mahona–Jojanto, Inc. v. Bank of New Mexico,* 79 N.M. 293, 442 P.2d 783 (1968), in its discussion of the summary judgment standard. The use of *Mahona–Jojanto,* a case decided long before *Anderson* and which was steeped in the traditional approach to summary judgment, simply does not support the view of the special concurrence. It should also be noted that *Furgason* supports our later suggestion in this opinion that *Anderson* may have been originally intended to be limited to defamation cases.

{13} The special concurrence next relies on *Wolford v. Lasater,* 1999–NMCA–024, 126 N.M. 614, 973 P.2d 866, claiming that our Court there recognized there were *no* distinctions between federal and state summary judgment standards. We disagree. Although *Wolford* agreed "with Defendants' argument that the federal and our state's constructions of summary judgment do not differ *substantively,*" the opinion clearly recognized that the standards were different, *id.* ¶ 11, as we note in this opinion.

{14} Finally, the three New Mexico Supreme Court cases discussed by the special concurrence merely relied on either *Anderson* or *Celotex* simply for the boilerplate language on summary judgment standards. Those cases contained no language that could be construed as "a significant move towards" the *Anderson* approach to summary judgment. Indeed, two of the cases cite to *Celotex* only once and do not even mention *Anderson.* As for *Goradia v. Hahn Co.,* 111 N.M. 779, 810 P.2d 798 (1991), a case heavily relied on by the special concurrence, a careful reading shows no such movement towards the adoption of *Anderson* in New Mexico.

{15} In *Goradia,* as in *Chen v. Metropolitan Ins. and Annuity Co.,* 907 F.2d 566 (5th Cir.1990), a case relied on by *Goradia* and the special concurrence, there were no genuine issues of fact in dispute. Consequently, the sole question was whether the facts could support the plaintiff's contentions. Because no facts were in dispute, the court's determination at the summary judgment stage would be based on the same standard as would be used at the end of trial for a directed verdict. That determination was whether, as a matter of law, "but one reasonable conclusion [could] be drawn" from the undisputed facts. *See Goradia,* 111 N.M. at 782, 810 P.2d at 801 (quoting *Anderson* ); *see also Chen,* 907 F.2d at 567 (citing to *Anderson* ). Once again, the special concurrence takes a unique situation, on this occasion a situation where no facts were in dispute, and attempts to declare "a significant move towards adoption" of *Anderson.*

{16} These cases then, as noted previously, only relied on *Anderson* for its boilerplate summary judgment holding, not its new approach to summary judgment. We therefore believe these Supreme Court cases do not support the proposition that New Mexico has moved towards the adoption of the *Anderson* standard.

### 2. Law of Summary Judgment Generally

{17} New Mexico case law holds that, in a summary judgment proceeding, the moving party must show there is "no genuine issue of fact as to one or more of the requisite elements...." *Eoff,* 109 N.M. at 701, 789 P.2d at 1268. The burden is first on the moving party to "make a prima facie showing that there [is] no genuine issue of fact as to one or more of the requisite elements in [non-movant's] claim ...." *Id.* (emphasis omitted); *see also State ex rel. Children, Youth & Families Dep't v. Joe R.,* 1997–NMSC–038, ¶ 15, 123 N.M. 711, 945 P.2d 76 (stating that moving party is "required to make a prima facie showing that ...." no genuine issues are disputed). Upon the showing by the moving party that no genuine issue exists, it is then the burden of the nonmoving party to present "a concise statement of all of the material facts as to which the moving party contends no genuine issue exists." Rule 1–056(D)(2) NMRA 2000. The nonmoving party need not, as contended by Petitioner, convince the trial court that the nonmoving party has evidence to "support all the elements of his case." The nonmoving party must merely show that "one or more

factual issues appear from the materials submitted to the court in connection with the motion" are contested. *Eoff,* 109 N.M. at 699, 789 P.2d at 1266. Even if the materials submitted to the court do not establish all the elements of the claim, it is enough if the materials are "sufficient to give rise to several issues of fact." *Id.* at 700, 789 P.2d at 1267. In short, "[s]ummary judgment should not be granted when material issues of fact remain or when the facts are insufficiently developed for determination of the central issues involved." *Vieira v. Estate of Cantu,* 1997–NMCA–042, ¶ 17, 123 N.M. 342, 940 P.2d 190.

### 3. Petitioner's Reliance on Specific Case Law

{18} Petitioner primarily relies on three cases decided by our Supreme Court that she contends implicitly adopt the rationale, if not the holding, in *Anderson.* They are: *Melnick,* 106 N.M. 726, 749 P.2d 1105; *Chavez v. Manville Products Corp.,* 108 N.M. 643, 777 P.2d 371 (1989); and *Eoff,* 109 N.M. 695, 789 P.2d 1262.

{19} At the outset, we note that these cases were decided well after *Anderson.* Yet, none of them address or even mention *Anderson,* even though the Court had the opportunity to do so. We recognize that fact alone does not imply a rejection of *Anderson 's* rationale. Justice Ransom's concurring opinion in *Eoff,* however, leads us to infer that our Supreme Court was well aware of *Anderson 's* holding. *See Eoff,* 109 N.M. at 702, 789 P.2d at 1269 (Ransom, J., concurring) (proposing adoption of *Anderson* ). We discuss separately the three cases relied on by Petitioner.

### a. *Melnick v. State Farm Mut. Auto. Ins. Co.*

{20} *Melnick* discussed the requirements for directed verdicts. Petitioner states that the Court treated summary judgment and directed verdict interchangeably. We disagree. *Melnick* only compared summary judgment and directed verdict in the context of whether a "trial court may revise or rescind an interlocutory order ...." *Melnick,* 106 N.M. at 727, 749 P.2d at 1106. In her brief-in-chief, Petitioner correctly analyzes *Melnick 's* holding. The case addressed the issue of whether a trial court's reversal of its own interlocutory ruling was reversible error and determined that it was not. *Id.* The analysis in *Melnick* dealt only with a directed verdict proceeding. We understand Petitioner to argue that the only difference between summary judgment and directed verdict proceedings is one of timing. In seeking to extend *Melnick 's* holding to a summary judgment proceeding, we believe Petitioner is reading too much into the Court's discussion in that case. For that reason, Petitioner's reliance on *Melnick* is misplaced.

### b. *Chavez v. Manville Products Corp.*

{21} Petitioner also misapplies the holding in *Chavez.* There, an employee brought suit against his former employer, claiming breach of contract and retaliatory discharge. *Chavez,* 108 N.M. at 644, 777 P.2d at 372. The employer moved for summary judgment and the trial court granted the motion on the breach of contract claim. *Id.* at 646, 777 P.2d at 374. Upon completion of employee's case on the retaliatory discharge claim, the employer moved for a directed verdict, which the trial court granted. *Id.* at 647, 777 P.2d at 375. The employee appealed both the summary judgment and the directed verdict. Our Supreme Court affirmed the summary judgment but reversed the directed verdict. *Id.* at 650, 777 P.2d at 378.

{22} *Chavez* separated the discussion of the summary judgment issue, *see id.* at 644–46, 777 P.2d at 372–74 (discussing entire issue concerning trial court's order granting summary judgment) from its discussion of the directed verdict issue. *See id.* at 647–50, 777 P.2d at 375–78 (discussing entire issue concerning the directed verdict). Petitioner correctly notes that "*Chavez* recognized the principles enunciated in the *Melnick* case." Those principles, however, only applied to the directed verdict issue, not the summary judgment issue. *See Chavez,* 108 N.M. at 647, 777 P.2d at 375 ("We recently have reviewed the standards for granting a directed verdict in *Melnick* ...."). Because *Chavez* involved both a summary judgment and a directed verdict, our Supreme Court essen-

tially had the opportunity to address Petitioner's claim that the "only difference between [the two proceedings] is timing." The Court did not do so, choosing instead to separate discussion of the two issues. *Id.* at 644–50, 777 P.2d at 372–78.

### c. *Eoff v. Forrest*

{23} In *Eoff*, the trial court granted the defendants' motion for summary judgment. Our Supreme Court examined the materials that were available to the trial court in ruling on the motion. *Eoff*, 109 N.M. at 699–700, 789 P.2d at 1266–67. The Court recognized that the evidentiary standard at trial would be clear and convincing. *Id.* at 699, 789 P.2d at 1266. The Court also concluded, however, that in a case involving a motion for summary judgment, the nonmoving party need not establish, by clear and convincing evidence, any of the required elements of their case. *Id.* at 700, 789 P.2d at 1267. It is "sufficient to give rise to several issues of fact." *Id.*

{24} Petitioner also argues that *Eoff* "was not in a position to adopt the *Anderson* standard in summary judgment proceedings because it never got that far." Petitioner correctly points out that our Supreme Court in *Eoff* determined that the defendants failed to "make a prima facie showing that there was no genuine issue of fact as to one or more of the requisite elements." *Id.* at 701, 789 P.2d at 1268 (emphasis omitted). *Eoff* also stated, however, that the standard for considering a summary judgment motion applied equally to both parties; that standard was whether there is "no genuine issue as to one or more of the material facts necessary to give rise to a claim . . . ." *Id.* at 702, 789 P.2d at 1269.

### C. The Holding in *Anderson*

{25} Even though none of the New Mexico cases we have just discussed adopted the rationale or holding in *Anderson*, we recognize that many state courts have adopted *Anderson*'s approach to summary judgment proceedings. We also note that the trial court in this appeal expressly stated in its order denying Petitioner's motion for summary judgment that, if the standard in considering whether to grant summary judgment was clear and convincing evidence as held in *Anderson*, it would have granted Petitioner's motion. We therefore consider whether *Anderson*'s holding should be adopted as law in New Mexico.

### 1. Analysis of *Anderson*'s Holding

{26} In *Anderson*, the plaintiff, a public official, brought a libel suit against a magazine. The issue the Court addressed was "whether the clear-and-convincing-evidence requirement must be considered . . . on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 244, 106 S.Ct. 2505. At the outset, we note that *Anderson*'s discussion gives us reason to pause.

{27} First, it is somewhat unclear whether the Court intended to limit its holding in *Anderson* to libel suits in which *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) applies. *See Anderson*, 477 U.S. at 247, 106 S.Ct. 2505. ("Our inquiry is whether the Court of Appeals erred in holding that the heightened evidentiary requirements that apply to proof of actual malice in this *New York Times* case need not be considered for the purposes of a motion for summary judgment."); *id.* at 257, 84 S.Ct. 710 ("In sum, a court ruling on a motion for summary judgment must be guided by the *New York Times* 'clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists . . . ."). What is abundantly clear, however, is that Justice Brennan, in his dissent, believed the majority's opinion was not so limited. *Id.* at 258, n. 1, 84 S.Ct. 710 (Brennan, J., dissenting). Additionally, both federal and state courts have broadly applied *Anderson* to all summary judgment proceedings.

{28} Second, in discussing summary judgment proceedings in general, the Court reiterated the basic principles for granting a summary judgment motion. *See id.* at 248, 106 S.Ct. 2505 ("[T]he requirement [for granting summary judgment] is that there be no genuine issue of material fact."). It also stated that a trial court is not to weigh the evidence but simply determine whether a "jury could reasonably find for the plaintiff."

*Id.* at 251, 106 S.Ct. 2505. The Court concluded that, to overcome the motion for summary judgment, the plaintiff in *Anderson* had to present "sufficient evidence" of the existence of actual malice. *Id.* at 249, 106 S.Ct. 2505.

{29} It is clear that the *Anderson* majority did not give the trial court the power to weigh the evidence. *Id.* at 255, 106 S.Ct. 2505. With this in mind, we must attempt to discern what the trial court should do when applying the evidentiary standard at trial to summary judgment proceedings. It is our understanding that the trial court need only determine if the disputed facts could possibly meet the appropriate standard at trial. The court must look at the "possibility" of meeting the standard because for the court to "determine" whether the evidence meets that standard is to weigh that evidence, which we know is a function *Anderson* leaves to the jury. *Id.* If the evidence presented at summary judgment has the possibility of meeting the clear-and-convincing standard, then the granting of summary judgment is not appropriate. *See id.* at 256, 106 S.Ct. 2505 (stating that where evidence is presented "from which a reasonable juror could return a verdict in his favor" summary judgment is not appropriate). If the evidence could allow a jury to conclude that the nonmovant's claim is true, then we believe *Anderson* requires denial of the motion. *Id.* In our view, this is the only possible interpretation that allows the Court's holding as a whole to be in harmony with each of its component parts.

{30} If *Anderson*'s holding, after all its "intellectual tidiness," as Chief Justice Rehnquist termed it in his dissent, supports the premise that credibility is for the jury, then summary judgment would again be inappropriate. *Id.* at 255, 106 S.Ct. 2505; *see also id.* at 270, 106 S.Ct. 2505 (Rehnquist, J., dissenting) ("[A]s long as credibility is exclusively for the jury, it seems the Court's analysis would still require this case to be decided by that body."). The *Anderson* majority conceded that "the [nonmovant], to survive the [movant's] motion [for summary judgment], need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. 2505. If cir-

cumstances are presented from which a jury could infer undue influence, then summary judgment should be denied. *See id.* at 249, 106 S.Ct. 2505 (Summary judgment will not be granted if "the moving parties' submissions [have] not foreclosed the possibility of the existence of certain facts from which it would be open to a jury ... to infer from the circumstances" that the elements of a claim have been met.).

## 2. Should We Adopt *Anderson* ?

■ {31} We are inclined to agree with Justice Brennan's and Justice Rehnquist's observations in their dissenting opinions. It appears that *Anderson*'s holding does not so much change the standard for summary judgment proceedings, but merely creates confusion for trial courts when determining the proper basis for granting or denying summary judgment. *See Anderson,* 477 U.S. at 264–65, 106 S.Ct. 2505 (Brennan, J., dissenting) (comparing the court's ruling to "the child's game of 'telephone,' in which a message is repeated from one person to another [until] the message bears little resemblance to [the] original [message]"); *id.* at 268–69, 106 S.Ct. 2505 (Rehnquist, J., dissenting) (determining that the court's opinion is "intellectual tidiness" that would have little effect on summary judgment proceedings). As noted by both dissents, the majority opinion apparently continues to hold that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not [the function] of [the] judge." *Id.* at 255, 106 S.Ct. 2505; *see id.* at 265, 106 S.Ct. 2505 (Brennan, J., dissenting) (reiterating the majority's holding that the trial court should not weigh the evidence), *id.* at 270, 106 S.Ct. 2505 (Rehnquist, J., dissenting) (pointing out that the majority still leaves "credibility determinations" to the jury).

■ {32} Additionally, we share Justice Brennan's concern that the *Anderson* approach to summary judgment could turn what is a summary proceeding "into a full-blown paper trial on the merits." *Id.* at 267, 106 S.Ct. 2505 (Brennan, J., dissenting). This type of approach places the trial court in the position of weighing the evidence,

which the majority in *Anderson* clearly determined was the domain of the jury. *See id.* at 255, 106 S.Ct. 2505 ("[W]eighing of the evidence ... [is a] jury function[ ]."). As Justice Brennan noted, determining whether evidence is sufficient to establish by a preponderance or by clear and convincing is the domain of the factfinder. *Id.* at 267–68, 106 S.Ct. 2505 (Brennan, J., dissenting) (giving an example of the problem with allowing the trial court to weigh evidence). It is clearly necessary, in determining what standard is met, to weigh the evidence. This is one of the many contradictions found in *Anderson*'s holding. It is not the function of the trial court to weigh the evidence. *See id.* at 249, 106 S.Ct. 2505 ("[A]t the summary judgment stage[,] the [trial court's] function is not ... to weigh the evidence and determine the truth ...."). Yet, it is a trial court's function to determine the weight a jury may give a particular piece of evidence. *See id.* at 251, 106 S.Ct. 2505 (" '[I]n every case ... there is a preliminary question for the [trial court], not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it ....' "). (Citation omitted.)

{33}     Finally, we agree with Justice Brennan that *Anderson*'s majority opinion "is replete with boilerplate language to the effect that trial courts are not to weigh evidence when deciding summary judgment motions ...." *Id.* at 265, 106 S.Ct. 2505 (Brennan, J., dissenting). Yet, he correctly notes that the majority's "opinion is also full of language [that] could surely be understood as an invitation—if not an instruction—to trial courts to assess and weigh evidence much as a juror would ...." *Id.* at 266, 106 S.Ct. 2505.

{34}     Justice Brennan's observation of *Anderson*'s holding sums up our own concern:

I simply cannot square the direction that the judge "is not himself to weigh the evidence" with the direction that the judge also bear in mind the "quantum" of proof required and consider whether the evidence is of sufficient "caliber or quantity" to meet that "quantum." I would have thought that a determination of the "caliber and quantity," i.e., the importance and value, of the evidence in light of the "quantum," i.e., amount "required," could *only* be performed by weighing the evidence. *Id.*

{35}     In summary, having reviewed *Anderson*'s majority opinion and its dissents, we are at a loss in ascertaining what substantive benefits, if any, the case would have on the law of summary judgment in New Mexico. Contestant contends on appeal that application of *Anderson* has "brought about a dramatic and fundamental change in summary judgment practice in federal courts." She also claims that *Anderson* has "resulted in more summary judgment motions being filed and more such motions being granted." Finally, Contestant argues that *Anderson*, along with other decisions, has "significantly expanded the applicability of summary judgment into an instrument designed to control both the volume of litigation overall and its scope in any particular case." We need not determine the merit of these arguments.

{36}     We also note at this juncture that procedural law in New Mexico is not merely a mirror image of federal law. Before we seriously consider a change in the traditional manner in which our courts have conceptually viewed summary judgment proceedings and adopt the federal approach, persuasive arguments for that change must be presented. Petitioner has failed to do so in this appeal. At this time, we perceive no sound need or rationale for discarding what in New Mexico has been a reliable method of applying the summary judgment rules, in exchange for the uncertainty and the potentially chaotic universe of the federal rule.

{37}     We make one final observation— there is one adverse effect any express adoption of the parties' interpretation of *Anderson* would have—confusion for trial courts. Trial courts, we fear, would interpret such adoption as greater authority in granting summary judgment motions and a greater invitation to weigh the evidence. Whatever benefits might accrue to New Mexico from adoption of the federal rule do not outweigh what we see as its burdens.

{38} The role of trial courts as gatekeepers has proven beneficial to our judicial process. But we believe there are limits to the trial court's authority in not permitting an entire case or a particular piece of evidence to be considered by a jury, the ultimate trier of fact. Permitting trial courts a license to quantify or analyze the evidence in a given case under whatever standard may apply, we believe, would adversely impact our jury system and infringe on the jury's function as the trier of fact and the true arbiter of the credibility of witnesses. Thus, in light of our Supreme Court's ruling in *Eoff*, as well as our own reservations about applying *Anderson* to state court proceedings, we decline to adopt *Anderson* for summary judgment proceedings in New Mexico.

## III. CONCLUSION

{39} We determine that the cases relied on by Petitioner do not support her claim that *Anderson* is "already the law of the State of New Mexico." Additionally, we decline to adopt the discussion or rationale in *Anderson* as procedural law in New Mexico because policy considerations support the retention of our traditional approach to summary judgment. We therefore affirm the trial court's denial of summary judgment. The parties shall bear their respective costs on appeal.

{40} **IT IS SO ORDERED.**

BOSSON, J., concurs.

ALARID, J., specially concurring.

ALARID, Judge (specially concurring).

{41} I am unable to find a clear message in New Mexico cases discussing summary judgment standards in the aftermath of *Anderson* and *Celotex*, two controversial federal summary judgment cases. My review of New Mexico decisions indicates that *Anderson* and *Celotex* have been cited in seven reported appellate decisions. While *Celotex*'s holding concerning the movant's initial burden is not directly implicated in the present case, I have surveyed New Mexico cases citing either *Anderson* or *Celotex* because I believe they are equally indicative of a tendency to treat federal and state summary judgment standards as interchangeable.

{42} In *Furgason v. Clausen*, 109 N.M. 331, 785 P.2d 242 (Ct.App.1989), we acknowledged that in the wake of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), a plaintiff who is a public figure must establish by clear and convincing evidence that the defendant acted with actual malice, whereas a plaintiff who is not a public figure must merely establish that the defendant negligently failed to check the truth or falsity of the communication prior to publication. *Furgason*, 109 N.M. at 337–39, 785 P.2d at 248–50. In reversing the grant of summary judgment in favor of the defendant, we cited *Anderson* without any qualifying signal as direct support for the proposition that "[a] motion for summary judgment in a defamation action necessarily involves determination of the substantive evidentiary standard of proof that would apply at a trial on the merits." *Furgason*, 109 N.M. at 339, 785 P.2d at 250.

{43} In *Blauwkamp v. University of New Mexico Hospital*, 114 N.M. 228, 836 P.2d 1249, (Ct.App.1992), we held that the defendants in a medical malpractice action could establish a prima facie case of entitlement to summary judgment merely by pointing out that the plaintiff lacked an expert witness and without the necessity of presenting an affidavit by their own expert. We discussed *Celotex*, holding that "on these facts *Celotex* and existing New Mexico cases produce the same result." *Blauwkamp*, 114 N.M. at 232, 836 P.2d at 1253.

{44} More recently, in *Wolford v. Lasater*, 1999–NMCA–024, 126 N.M. 614, 973 P.2d 866, we considered whether differences in federal and state summary judgment standards would justify denying preclusive effect to a summary judgment granted in federal court. In *Wolford*, the plaintiff, citing *Anderson*, argued that the trial court should have refused to give preclusive effect to a prior federal summary judgment because plaintiff "had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action." *Wolford*, 1999–NMCA–024, ¶ 5, 126 N.M.

614, 973 P.2d 866 (quoting Restatement (Second) of Judgments § 28(4) (1980)). We rejected this argument, stating that "[w]e agree with Defendants' argument that the federal and our own state's constructions of summary judgment do not differ substantively." *Wolford*, 1999–NMCA–024, ¶ 11, 126 N.M. 614, 973 P.2d 866.

{45} A review of New Mexico Supreme Court decisions indicates that our Supreme Court has cited *Celotex* or *Anderson* in four cases: *Eoff*, discussed in the majority opinion; *Goradia v. Hahn Co.*, 111 N.M. 779, 810 P.2d 798 (1991); *Paca v. K–Mart Corp.*, 108 N.M. 479, 775 P.2d 245 (1989) and *Peck v. Title USA Ins. Corp.*, 108 N.M. 30, 766 P.2d 290 (1988). In *Peck* and *Paca* the Supreme Court, employing the introductory signal, "*see also*" cited *Celotex* for the unexceptional proposition that summary judgment is appropriate where there are no genuine issues of material fact. I find *Goradia* to be the most interesting of the post-*Anderson/Celotex* cases.

{46} In my view, *Goradia* represents a significant move towards adoption of Justice Ransom's special concurrence in *Eoff*. Unlike *Eoff*, which was decided based on the *movant's* failure to make out a *prima facie* case of entitlement to summary judgment, *Goradia* was decided based on the *non-movant's* failure to meet his burden in responding to a motion for summary judgment. In *Goradia*, the Supreme Court described the applicable standard:

> If from the facts presented, "but one reasonable conclusion" can be drawn, *Anderson*, 477 U.S. at 250 [106 S.Ct. 2505], then summary judgment must be granted. Only if a fair minded factfinder, on the facts presented in [defendant's] motion, could return a verdict for [plaintiff] can [defendant's] motion be denied. *See, e.g.*, *Chen v. Metropolitan Ins. and Annuity Co.*, 907 F.2d 566, 567 (5th Cir.1990) (construing *Anderson*).

*Goradia*, 111 N.M. at 782, 810 P.2d at 801 (parallel citation omitted). *Goradia*'s fair-minded-juror summary judgment standard mirrors New Mexico's directed verdict standard. *See Eoff*, 109 N.M. at 702, 789 P.2d at 1269 (Ransom, J., specially concurring) (mo-

tion for directed verdict must be denied where sufficient evidence has been introduced to allow reasonable juror to find in plaintiff's favor under applicable burden of proof). The *Goradia* court's reliance on the *Chen* decision further supports the conclusion that the *Goradia* court was moving toward equating summary judgment and directed verdict standards. In *Chen*, the United States Court of Appeals for the Fifth Circuit described the non-movant's burden as follows:

> When [plaintiffs] received [defendant's] motion for summary judgment, they bore the onus of establishing that some fact issue existed showing that the insured's death was accidental. The [plaintiffs] were entitled to the trial court's indulging in their favor all reasonable inferences proceeding from the facts before it. *If a fair minded jury, on the facts presented in the motion, could have returned a verdict for the [plaintiffs], then the judge is required to deny the motion for summary judgment.* The motion for summary judgment involves two competing interests: the [plaintiffs], asserting that their claim is adequately based in fact; and the insurer's defense that the [plaintiffs'] claim has no basis in fact. The trial court's obligation is to give due regard to both interests, and the trial judge is not to determine whether in his opinion the contradictory evidence favors one side or the other.

*Chen*, 907 F.2d at 567–68 (citations to *Anderson* and *Celotex* omitted) (emphasis added). *Chen*'s fair-minded-jury-could-have-returned-a-verdict summary judgment standard is remarkably similar to the directed verdict standard described by Justice Ransom's concurrence in *Eoff*.

{47} Express adoption of *Anderson* would affect summary judgment practice in two important ways. First, it would eliminate any question as to whether the standards for deciding summary judgments and directed verdict motions are the same. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. Second, it would require consideration of the applicable burden of proof in the context of summary judgment. *See Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505.

{48} By the time a case gets to the summary judgment phase, the litigants will have had the benefit of our liberal discovery provisions. If a party needs additional time to respond to a premature motion for summary judgment, Rule 1–056(F) authorizes trial courts to grant continuances to enable non-movants to develop evidence to oppose summary judgment. The point of summary judgment seems to me to be to weed out those cases in which a party's case is so weak that no rational jury could return a verdict in that party's favor. If the evidence a party has on hand to respond to a motion for summary judgment is too weak to prove its case at trial, how does that same evidence justify empaneling a jury? What process occurs subsequent to summary judgment and prior to trial to transform this inadequate evidence into a submissible case? *Anderson* gives content to the term "genuine issue" by directly relating this term to the non-movant's burden at trial.

{49} Moreover, I believe that the majority overstates the difficulties in applying *Anderson*. In particular, I do not accept the premise that adoption of *Anderson* would embroil trial courts in impermissible "weighing" of the evidence. When a trial court rules on a motion for directed verdict or a motion for judgment notwithstanding the verdict, it must evaluate the evidence under the relevant burden of proof. When we review the sufficiency of the evidence supporting a criminal conviction or a judgment terminating parental rights, we review the evidence in the light of heightened burdens of proof. It is clear, however, that regardless of the applicable burden of proof, in each of these contexts the court does not *weigh* the evidence in the sense of deciding credibility or assigning relative values to conflicting evidence. If courts did not consider the varying burdens of proof in reviewing the sufficiency of the evidence supporting a party's case, these varying burdens of proof could simply be disregarded by the factfinder. I believe that trial courts are capable of making the same type of distinctions we make in substantial evidence review, or that trial courts themselves routinely make in ruling on motions for a directed verdict, when they rule on motions for summary judgment.

{50} Based on my review of the record, I believe that application of *Anderson* would likely be outcome-determinative in the present case. *Cf. In re Estate of Gersbach*, 1998–NMSC–013, 125 N.M. 269, 960 P.2d 811 (reversing trial court finding of undue influence on ground that evidence was insufficient to enable reasonable factfinder to find by clear and convincing evidence that testator made a gift he would not have made absent improper influence). Nevertheless, I have chosen to specially concur rather than to dissent because I believe that the dispositive question on appeal is whether our Supreme Court has, in fact, adopted the federal standards, and not whether New Mexico's traditional standards represent the better approach. If our Supreme Court has adopted *Anderson* and *Celotex*, we should apply their standards to this case. If the Supreme Court has not, adoption of the federal standards is tantamount to substantially rewriting Rule 1–056, and therefore is beyond the authority of this Court. *See Tafoya v. S & S Plumbing Co.*, 97 N.M. 249, 252, 638 P.2d 1094, 1097 (Ct. App.1981). While I am less confident than the other members of the panel that New Mexico still clings to its pre-*Anderson*/*Celotex* summary judgment standards, I concur in the result reached because of my belief that adoption of *Anderson* or *Celotex* should be accomplished, if at all, by *express* directive of our Supreme Court.